**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| WONDERLAND NURSERYGOODS CO., LTD., | ) ) ) | Civil Action<br><br>No. 2:13-cv-00387 |
| Plaintiff, | ) ) | Judge Mark R. Hornak |
| v. | ) ) | |
| THORLEY INDUSTRIES, LLC (*d/b/a* 4MOMS), | ) ) ) | ***Electronically Filed*** |
| Defendant. | ) | |

**DEFENDANT THORLEY INDUSTRIES, LLC'S
<u>RESPONSIVE CLAIM CONSTRUCTION BRIEF</u>**

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................. 1

II.    LEGAL FRAMEWORK .................................................................................... 2

    A.   The Claim Language ................................................................................. 3

    B.   The Specification ...................................................................................... 3

    C.   The Prosecution History .......................................................................... 4

    D.   Extrinsic Evidence ................................................................................... 5

III.   THORLEY'S PROPOSED CLAIM CONSTRUCTIONS ............................... 5

    A.   "baby crib" ............................................................................................... 5

    B.   "bed frame structure including a plurality of upright tubes" ................... 7

        1.  The "structural members" limitation ............................................ 8

        2.  The "cylindrical" limitation ......................................................... 10

    C.   "outer wall" ............................................................................................. 11

    D.   "extending along a length" ....................................................................... 14

    E.   "the outer wall having an outwardly facing surface
        and defining an outer contour shape of the upright tube" ....................... 14

        1.  Outwardly facing surface .............................................................. 15

        2.  Outer contour shape ...................................................................... 21

    F.   "configured to lodge into" ....................................................................... 22

    G.   The "whereby…" clause ......................................................................... 24

        1.  Whereby the enclosure member extends from one
        upright tube generally in directions of other of the upright tubes ............ 25

        2.  Substantially out of contact with ................................................. 26

        3.  Such that the outwardly facing surface of each of the
        upright tubes is exposed on an outside of the enclosure member ............ 26

IV.    THORLEY'S STATEMENT OF THE ANTICIPATED LENGTH OFTIME
       NECESSARY TO PRESENT ITS CASE AT THE *MARKMAN* HEARING.................. 28

V.     STATEMENT REGARDING WONDERLAND's EXTRINSIC EVIDENCE............... 29

VI.    CONCLUSION.................................................................................................... 29

## TABLE OF AUTHORITIES

## CASES

*ActiveVideo Networks, Inc. v. Verizon Commc'ns., Inc.*,
    694 F.3d 1312 (Fed. Cir. 2012)......................................................... 6, 11, 25

*Becton, Dickinson & Co. v. C.R. Bard, Inc.*,
    922 F.2d 792 (Fed. Cir. 1990)......................................................... 28

*Bicon, Inc. v. Straumann Co.*,
    441 F.3d 945 (Fed. Cir. 2006)......................................................... 12

*Cat Tech LLC v. TubeMaster, Inc.*,
    528 F.3d 871 (Fed. Cir. 2008)......................................................... 12

*Chimie v. PPG Indus., Inc.*,
    402 F.3d 1371 (Fed. Cir. 2005)......................................................... 8

*Comark Communications, Inc. v. Harris Corp.*,
    156 F.3d 1182 (Fed. Cir. 1998)......................................................... 3

*Embrex, Inc., v. Serv. Eng'g Corp.*,
    216 F.3d 1343 (Fed. Cir. 2000)......................................................... 15

*Finjan, Inc. v. Secure Computing Corp.*,
    626 F.3d 1197 (Fed. Cir. 2010)......................................................... 6, 11, 25

*Graham v. John Deere Co.*,
    383 U.S. 1 (1966)......................................................... 9

*Halliburton Energy Services, Inc. v. M-1 LLC*,
    514 F.3d 1244 (Fed. Cir. 2008)......................................................... 27

*Hockerson–Halberstadt, Inc. v. Avia Group Int'l, Inc.*,
    222 F.3d 951 (Fed. Cir. 2000)......................................................... 4

*i4i Ltd. P'ship v. Microsoft Corp.*,
    598 F.3d 831 (Fed. Cir. 2010)......................................................... 12

*K-2 Corp. v. Salomon S.A.*,
    191 F.3d 1356 (Fed. Cir. 1999)......................................................... 15

*Mangosoft, Inc. v. Oracle Corp.*,
    525 F.3d 1327 (Fed. Cir. 2008)......................................................... 4

*Markman v. Westview Instruments, Inc.,*
    517 U.S. 370 (1996).................................................................................. 2

*Netword LLC v. Centraal Corp.,*
    242 F.3d 1347 (Fed. Cir. 2001)............................................................... 4

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.,*
    521 F.3d 1351 (Fed. Cir. 2008)............................................................... 6

*Phillips v. AWH Corp.,*
    415 F.3d 1303 (Fed. Cir. 2005)......................................................... passim

*Renishaw PLC v. Marposs Societa' per Azioni,*
    158 F.3d 1243 (Fed. Cir. 1998)............................................................... 3

*Rhine v. Casio, Inc.,*
    183 F.3d 1342 (Fed Cir. 1999)............................................................... 28

*Southwall Techs., Inc. v. Cardinal IG Co.,*
    54 F.3d 1570 (Fed. Cir. 1995)................................................................. 4

*Thorner v. Sony Computer Entm't Am. LLC,*
    669 F.3d 1362 (Fed. Cir. 2012)............................................................... 9

*U.S. Surgical Corp. v. Ethicon, Inc.,*
    103 F.3d 1554 (Fed. Cir. 1997)............................................................... 5

*Vitronics Corp. v. Conceptronic, Inc.,*
    90 F.3d 1576 (Fed. Cir. 1996)............................................................. 3, 4

## STATUTES

35 U.S.C. § 112.................................................................................... 3, 25

35 U.S.C. § 112(b)..................................................................................... 27

Defendant, Thorley Industries, LLC (d/b/a/ 4MOMS) ("Thorley"), respectfully submits this Responsive Claim Construction Brief in accordance with LPR 4.3 and Par. 11 of the Court's Initial Patent Scheduling Order (Dkt. 24). This brief addresses why the Court should adopt the constructions proposed by Thorley in the Joint Disputed Claim Terms Chart (Dkt. 31) submitted on September 10, 2013 and, additionally, responds to the positions advanced by Plaintiff Wonderland Nurserygoods Co., Ltd. ("Wonderland") in its Opening Claim Construction Brief (Dkt. 32) ("Opening Brief" or "Pl.'s Br.").

## I.  INTRODUCTION

The patent-in-suit, United States Reissue Patent No. 43,919 ("the '919 patent") (Exh. A[1]), relates to a product that virtually everyone has encountered at some point in his or her life – a baby crib or playard. The allegedly inventive aspect described in the '919 patent relates to the manner in which the fabric enclosure member is connected to the frame of the crib. More particularly, the '919 patent describes a specific configuration in which the enclosure member includes a plurality of positioning posts which are lodged into upright tubes positioned at the corners of the baby crib to secure the enclosure member to the baby crib without the need for screws or other attachment means.

The only asserted claim of the '919 patent is claim 8. This claim defines a "baby crib" using words that are, by and large, straightforward, plainly stated, and understandable to a person of ordinary skill in the art. Yet, despite the straightforward language used in the claim, Wonderland has asked the Court to construe significant portions of the claim in a thinly-veiled attempt to re-draft the claim to better support its infringement case. As described below, construction of many of the "disputed" terms is simply unnecessary since the plain and ordinary

---

[1] All Exhibits hereto were also included in Thorley's Appendix of Intrinsic Evidence (Dkt. No. 31-3).

meaning of the claim language is more than adequate, and the Court should decline Wonderland's improper request to re-craft the asserted claim during claim construction.

However, there are certain instances in which the claim language is potentially confusing and is thus in need of construction by the Court.  This is largely the product of the protracted post-grant reissue proceeding which resulted in the '919 patent during which much of the claim language, including the entirety of asserted claim 8, was added.[2]  Because some of this new claim language finds very little (if any) support in the specification, it is appropriate, and necessary, to turn to other sources, including the prosecution history and extrinsic evidence, to gain better insight into the true meaning of this language in the context of the '919 patent.  For these terms, Thorley has proposed constructions that are easily understandable and fully supported by the intrinsic and extrinsic record, in accordance with the bedrock principles of claim constructions established by the Federal Circuit in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc), and progeny.

Accordingly, for the reasons discussed herein, the Court should adopt Thorley's proposed constructions as, for each disputed term, Thorley's is "[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention." *Phillips*, 415 F.3d at 1316.

## II.    LEGAL FRAMEWORK

Patent claims are construed as a matter of law.  *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 391 (1996).  The basic canons of claim construction are summarized in the Federal Circuit's en banc *Phillips* decision.  It is a "bedrock principle" of patent law that the claims of a

---

[2] The '919 patent resulted from U.S. Patent Application No. 11/588,412, filed on October 26, 2006, which was a reissue application based on U.S. Patent No. 6,859,957, issued on March 1, 2005.  *See* '919 patent, cover page.

patent define the scope of the invention. *Phillips,* 415 F.3d at 1312. In essence, the Court must attempt to construe a claim term or phrase in accordance with its meaning to a person of ordinary skill in the art at the time of the invention and in light of the patent specification, file history, and, if necessary, extrinsic evidence such as dictionary definitions. *Id.* at 1313-17. In the end, the construction that "most naturally aligns" with the patent specification is the one that should be adopted by the Court. *Id.* at 1316 (quoting *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998)).

### A. The Claim Language

The analysis starts with an inspection of how the disputed term is used in the claims. "[T]he context in which a term is used in the asserted claim can be highly instructive." *Phillips*, 415 F.3d at 1314. Additionally, "[o]ther claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment as to the meaning of a claim term." *Id.* Thus, the proper construction of a claim term involves reading the disputed term in the context of the other words and phrases in the claim at issue as well as other claims in the patent.

### B. The Specification

While "[t]he appropriate starting point [. . .] is always with the language of the asserted claim itself," *Comark Communications, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998), the claims also "must be read in view of the specification, of which they are a part." *Phillips*, 415 F.3d at 1315. The specification "is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). The importance of the specification derives from its statutory role in providing "a written description of the invention . . . in . . . full, clear, concise, and exact terms . . . ." 35 U.S.C. § 112. In light of this

statutory directive, the "specification necessarily informs the proper construction of the claims," *Phillips*, 415 F.3d at 1316, and the claims do not have meaning outside of the context of the specification. *Netword LLC v. Centraal Corp.*, 242 F.3d 1347, 1352 (Fed. Cir. 2001). The specification provides context for the claims and acts as a dictionary so that one of skill in the art may understand the scope of the claimed invention. *Phillips*, 415 F.3d at 1321.

### C.     The Prosecution History

The Court "should also consider the patent's prosecution history." *Markman*, 52 F.3d at 980. "The prosecution history constitutes a public record of the patentee's representations concerning the scope and meaning of the claims, and competitors are entitled to rely on those representations when ascertaining the degree of lawful conduct, such as designing around the claimed invention." *Hockerson–Halberstadt, Inc. v. Avia Group Int'l, Inc.*, 222 F.3d 951, 957 (Fed. Cir. 2000). As "the record before the Patent and Trademark Office[, the prosecution history] is often of critical significance in determining the meaning of the claims." *Vitronics*, 90 F.3d at 1582. "Like the specification, the prosecution history provides evidence of how the PTO and the inventor understood the patent." *Phillips*, 415 F.3d at 1317.

Amendments to the claims or arguments to the Examiner, which ascribe certain significance to terms in a claim to distinguish prior art, cannot be recaptured to effectively ignore what was disclaimed during prosecution. *Mangosoft, Inc. v. Oracle Corp.*, 525 F.3d 1327, 1332-33 (Fed. Cir. 2008); *see also Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995) ("[T]he prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution.").

### D.    Extrinsic Evidence

The Court may also rely on extrinsic evidence, which is "all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Markman*, 52 F.3d at 980.

### III.   THORLEY'S PROPOSED CLAIM CONSTRUCTIONS

### A.    "baby crib"

| Thorley's Proposed Construction | Wonderland's Proposed Construction |
| --- | --- |
| *No construction necessary, plain and ordinary meaning applies* | *No construction necessary, plain and ordinary meaning applies* |
| | or |
| | a bed with sides designed to support an infant in a sleeping or standing position |

Wonderland states in its Opening Brief that the term "baby crib" has an ordinary meaning and that the term need not be construed.  Pl.'s Br. at 5.  Thorley agrees with this position. However, the chart at the end of Wonderland's Opening Brief offers a proposed construction of "baby crib" that includes potentially confusing limitations that are simply not necessary to make this term understandable to a jury.  To the extent Wonderland is proposing the construction contained in its chart (rather than the "no construction" position advocated elsewhere in its Opening Brief), the Court should reject Wonderland's position.

The term "baby crib" is a common term, and reading it in the context of the claims involves little more than applying its standard meaning.  Moreover, there is nothing in the specification or prosecution history to suggest that a meaning other than the common meaning for this term should control.  Claim construction "is not an obligatory exercise in redundancy," *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997), and district courts

"are not (and should not be) required to construe every limitation present in a patent's asserted claims." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008).   Accordingly, because the term "baby crib" is already in a form that is easily understood, construction is unnecessary. *Phillips*, 415 F.3d at 1314; *ActiveVideo Networks, Inc. v. Verizon Commc'ns., Inc.*, 694 F.3d 1312, 1325-26 (Fed. Cir. 2012); *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1206-07 (Fed. Cir. 2010).   Thus, the Court need not construe this term, and should not adopt the unnecessary language proposed by Wonderland on page 13 of its Opening Brief.

In addition to being unnecessary, Wonderland's page 13 construction should also be rejected because it is vague and ambiguous.   For instance, Wonderland proposes limiting a "baby crib" to a bed designed to support "an infant," but does not explain why the occupant of the "baby crib" can only be an infant, or whether the word "infant" also encompasses a toddler or small child.   The specification does not use the word "infant," and instead uses the term "baby," though one would understand that the apparatus shown and described in the '919 patent is not only useful for an "infant."   Wonderland's selected "infant" language is particularly confusing since Wonderland also asserts that the "baby crib" could support an infant in a "standing position," which is not a skill possessed by most infants.   Wonderland's page 13 construction also includes language concerning what the "baby crib" is ***designed*** for, which creates an unnecessary and potentially difficult inquiry into the subjective motivation behind a particular design.   For at least these additional reasons, Wonderland's page 13 construction should be rejected.

Because the parties are in agreement that this term has a common meaning and can be readily understood, the Court should decline to construe the term and should instead allow the plain and ordinary meaning to control.

### B.   "bed frame structure including a plurality of upright tubes"

| Thorley's Proposed Construction | Wonderland's Proposed Construction |
|---|---|
| *No construction necessary; plain and ordinary meaning applies* <br><br> <u>If construed</u>: <br><br> "plurality of upright tubes" means at least two upright hollow elongated cylinders | A structure that gives shape and strength to a surface upon which a child can sleep or stand and which includes generally vertical hollow supports as structural components |

While the chart on page 13 of Wonderland's Opening Brief offers an elaborate construction for this rather straightforward phrase, the only dispute Wonderland actually addresses is the meaning of the term "upright tubes." More specifically, Wonderland argues that the Court should adopt a construction of "upright tubes" that makes it clear the tubes are "<u>structural</u> in nature." Pl.'s Br. at 6 (emphasis in original). Wonderland also argues that the Court should require the tubes to be generally vertical and hollow, but not cylindrical. *Id.* at 6-7. For the reasons discussed below, the Court should reject Wonderland's arguments and hold that no construction is necessary for this term since the term "upright tubes," as well as the larger phrase "bed frame structure including a plurality of upright tubes," are readily understandable in their current form. However, if the Court believes construction is necessary, it should clarify that "upright tubes" are hollow elongated cylinders, consistent with the widely accepted meaning of the word "tube."

1.    The "structural members" limitation

The Court should reject Wonderland's request to further define the "upright tubes" as "structural in nature."  The plain language of claim 8 requires the upright tubes to be part of the "bed frame structure" of the baby crib.  Thorley does not dispute this.  There is no need for the Court to clarify this point since the plain language of claim 8 already defines the baby crib as comprising "a bed frame structure including a plurality of upright tubes."  Thus, construction is unnecessary.

Further, there is no reason to place any limits on the "upright tubes" beyond those required by the words of the claim.  Wonderland asks the Court to clarify that "the upright tubes are actual structural members."  Pl.'s Br. at 5.  While exactly what Wonderland means by this is unclear, to the extent Wonderland is hoping to narrow the meaning of "upright tubes" to only components that, by themselves, provide the structural integrity of the baby crib, or that, alone, hold up the bed surface of the baby crib, there is simply no reason for such a narrowing construction.  As mentioned above, the plain language of claim 8 requires the upright tube to be *part of* the bed frame structure.  Nothing more is required.  Wonderland does not cite any intrinsic evidence that would justify limiting the claims in this manner.  Wonderland's attempt to unnecessarily narrow the claims should be rejected.  *Phillips*, 415 F.3d at 1323.

In addition, Wonderland's proposed "structural components" terminology and "structural in nature" argument are vague, adding unnecessary confusion to the claim language, and for this additional reason should be rejected.  *See Chimie v. PPG Indus., Inc.,* 402 F.3d 1371, 1377 (Fed. Cir. 2005) ("Courts construe claim terms in order to assign a fixed, unambiguous, legally operative meaning to the claim").  For instance, Wonderland's arguments simply beg the question of what it means for the upright tubes to be "actual structural members" or "structural in

nature." Thus, rather than helping the jury to understand the meaning and scope of the claim, Wonderland's proposed "clarification" would actually create additional issues for the jury to consider.

Finally, Wonderland's reliance on the Bidwell reference and Thorley's invalidity position is misplaced. The Federal Circuit has made it clear that patent claims are to be given their broadest reasonable interpretation consistent with the specification and should only be narrowed when there is support for doing so in the intrinsic or extrinsic record. *Phillips*, 415 F.3d at 1323; *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365-66 (Fed. Cir. 2012). Yet, here Wonderland's justification for narrowing the meaning of "upright tubes" appears to be Wonderland's disagreement with Thorley's interpretation of a piece of prior art. Wonderland's argument regarding the prior art is premature and improper at the claim construction phase. If Wonderland believes that the "retainer 22" of Bidwell does not meet the upright tube limitation because it is not part of a bed frame structure, Wonderland is certainly free to argue that point at the appropriate time. But that determination is a factual one that should be made once the record is developed. *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966) (holding that the scope and content of the prior art is a factual inquiry). In any event, Thorley does not agree that the "retainer 22" in Bidwell, which engages the corner posts and aids in retaining the fabric member in place, is not a structural member. Thus, even adopting Wonderland's proposed construction would not resolve this point of contention between the parties, further highlighting why it would be improper and premature for the Court to accept Wonderland's request to narrow the claims in view of the prior art (rather than the intrinsic record).

Accordingly, the Court should not adopt Wonderland's "structural components" language.

2.    The "cylindrical" limitation

The word "tube" is a common word and the '919 patent does not suggest that anything other than the ordinary meaning applies.  Thus, Thorley submits that construction is unnecessary.  Wonderland, on the other hand, believes construction is necessary and asserts that the "upright tubes" are "generally vertical" and "hollow."  Thorley agrees that these are characteristics of an "upright tube."   However, this construction is incomplete because, as confirmed by several extrinsic sources reviewed by Thorley, a tube is also generally understood to be "cylindrical."  For example:

**tube** (to͞ob, tyo͞ob)
*n.*
   **1.**
        **a.** A hollow cylinder, especially one that conveys a fluid or functions as a passage.
        **b.** An organic structure having the shape or function of a tube; a duct: *a bronchial tube.*
   **2.** A small flexible cylindrical container sealed at one end and having a screw cap at the other, for pigments, toothpaste, or other pastelike substances.

www.thefreedictionary.com/tube (last visited October 21, 2013)

**Full Definition of TUBE** ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯ ❮ Cite!   g+1   Like

  **1** : any of various usually cylindrical structures or devices: as

    **a :** a hollow elongated cylinder; *especially* : one to convey fluids

    **b :** a soft tubular container whose contents (as toothpaste) can be removed by squeezing

www.merriam-webster.com/dictionary/tube (last visited October 21, 2013)

Further, the sole embodiment of the "upright tubes" described in the specification falls squarely within Thorley's proposed construction.  The "upright tubes" are represented in the

figures as element 11.  *See, e.g.,* '919 patent at 2:21-22.[3]  Figures 3 and 5 each shows the upright tube (11) as a hollow *and* cylindrical structure.

In support of its position that the "upright tube" need not be cylindrical, Wonderland offers an illustration labeled as "square tube."  Pl.'s Br. at 7.  Wonderland provides no indication of where this "square tube" comes from, or why it would "certainly" or "undoubtedly" qualify as an upright tube in the '919 patent.  Pl.'s Br. at 7-8.  What is certain is that neither the '919 patent nor the above extrinsic sources mention a tube having anything other than a cylindrical cross-section.

Accordingly, to the extent the Court elects to construe this term, "upright tube" should be defined as hollow *and* cylindrical.

### C.      "outer wall"

| Thorley's Proposed Construction | Wonderland's Proposed Construction |
| --- | --- |
| *No construction necessary; plain and ordinary meaning applies* | *No construction necessary; plain and ordinary meaning applies.* |
| | ** however, Wonderland asserts that "any" wall can be the "outer wall." |

The term "outer wall" is comprised of common words, and reading them in the context of the claims involves little more than applying their standard meanings.  A layperson could readily understand what is meant by the term "outer wall," and there is nothing in the intrinsic record to suggest that this term has a special or unconventional meaning in the context of the '919 patent.  Accordingly, construction is unnecessary.  *Phillips*, 415 F.3d at 1314; *ActiveVideo Networks*, 694 F.3d at 1325-26; *Finjan*, 626 F.3d at 1206-07.

---

[3] References to the patent specification are provided in the format __:__ to denote column:line.

In its brief, Wonderland agrees that the term "outer wall" is one which is not in need of construction because the meaning thereof can be readily understood.  Pl.'s Br. at 8.  Thorley agrees.  However, Wonderland then complicates things by suggesting that the use of the indefinite article "an" somehow means that "**_any_**" wall of the upright tube can qualify as an outer wall.  *Id*. (emphasis in original).  This is wrong and this position must be rejected.  The claim term is "*outer* wall," not simply "wall," and the word "outer" cannot be ignored since to do so would violate the basic canon of patent law that claims must be "interpreted with an eye toward giving effect to all terms in the claim."  *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006); *see also Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 885 (Fed. Cir. 2008) (refusing to adopt a claim construction which would render a claim limitation meaningless).

More specifically, construing "outer wall" as "any wall" would effectively remove the word "outer" from the claim and permit Wonderland to argue that something such as an inner wall – the very antithesis of an outer wall – meets the claim language simply because it is a wall. Of course, this is nonsensical.  If the applicant wanted the claim to simply refer to a "wall," he could have said "wall."  *See i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 843 (Fed. Cir. 2010) ("Had the inventors intended this limitation, they could have drafted the claims to expressly include it.").  Instead, he elected to define his invention using the term "outer wall." Accordingly, a construction which replaces the word "outer" with "any" is improper.

In addition, while Wonderland contends on page 8 of its Opening Brief that no construction is necessary, the chart at the end of Wonderland's brief proposes that "outer wall" be construed as "a wall away from the center of the tube."  Pl.'s Br. at 13.  It is thus unclear whether Wonderland is advancing the "no-construction-plus-'any wall' caveat" position on page 8 or the "away from the center of the tube" construction on page 13.  To the extent it is the latter,

such a construction would unnecessarily complicate the term "outer wall" by replacing the word "outer" with the phrase "away from the center of the tube."  The meaning of the phrase "away from the center of the tube" is vague, and for that reason alone should be rejected.  *Chimie,* 402 F.3d at 1377.  Further, this phrase (as best understood) appears to suggest that any wall away from the center of the tube can qualify as an "outer wall," even if it does not align with the plain and ordinary meaning of "***outer*** wall."  While, in some instances, a wall away from the center of a tube could be an outer wall, in other instances, it might not.  For example, a basic tube, the cross section of which is represented below, has an inner wall and an outer wall, both of which are away from the center of the tube.  Under Wonderland's proposal, both of these would be "outer walls."[4]



There is nothing in the '919 patent or its file history that would lead one skilled in the art to believe that the term "outer wall" has anything other than its plain and ordinary meaning.  Certainly there is nothing in the intrinsic record to suggest that "outer wall" means "any wall" or "a wall away from the center of the tube."  It would be error to adopt either of these constructions.

---

[4] Wonderland's proposal that an outer wall is any wall away from the center of the tube presupposes that there could be a wall "at the center of tube."  Exactly what form such a wall would take is a mystery to Thorley.

Thus, Thorley agrees with Wonderland that the term "outer wall" should not be construed.  Wonderland's arguments that the "outer wall" can be any wall or that the "outer wall" is any wall "away from the center of the tube" should be rejected and Wonderland should be precluded from arguing these constructions to the jury.

**D.    "extending along a length"**

The parties are in agreement that "extending along a length" of the upright tube means "existing along the full length" of the upright tube.  Pl.'s Br. at 8.  Thus, the Court should adopt this agreed upon construction.

**E.    "the outer wall having an outwardly facing surface and defining an outer contour shape of the upright tube"**

| Thorley's Proposed Construction | Wonderland's Proposed Construction |
|---|---|
| **Outwardly facing surface**:  outer or exterior surface of the tube<br><br>**Outer contour shape of the tube**:  no construction necessary; if construed, outer shape of the tube | a surface (or a portion of a surface) of a wall (or a portion of a wall) of the tube that faces away from the crib |

Wonderland has proposed for construction an entire phrase of claim 8, offering as a "construction" a complete rewrite of that phrase which conflates several limitations and fundamentally alters the overall meaning of the claim.  Further, Wonderland's position as to the language that should replace the language of the claim finds no support in the intrinsic record and is contrary to statements made during prosecution.  Thus, Wonderland's position must be rejected.

As an initial matter, the Court should decline Wonderland's invitation to rewrite an entire phrase of claim 8 since there is no reasonable basis for doing so.  As the Federal Circuit has made clear, "Courts do not rewrite claims; instead, we give effect to the terms chosen by the

patentee." *K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1364 (Fed. Cir. 1999); *see also Embrex, Inc., v. Serv. Eng'g Corp.*, 216 F.3d 1343, 1347 (Fed. Cir. 2000) ("The construction of claims is simply a way of elaborating the normally terse claim language[] in order to understand and explain, but not to change, the scope of the claims.") (internal quotations and citation omitted.) The phrase in question consists largely of common words used in their ordinary manner. There is simply no need to rewrite the entire phrase as Wonderland has requested.

As reflected in the above chart, Thorley has parsed the phrase proposed by Wonderland and identified two terms which it submits the Court should address. For one of those terms ("outwardly facing surface"), Thorley offers a construction that is consistent with the intrinsic record and presents a clear and easily understandable definition. The other term ("outer contour shape") is a common and readily understood phrase that is used in its customary way, and is thus not in need of construction. Each term is addressed below.

1.  Outwardly facing surface

For this straightforward phrase, Thorley has offered a straightforward construction. Specifically, Thorley contends that the "outwardly facing surface" of the upright tube is the outer or exterior surface of the tube. This straightforward construction is correct because it aligns most naturally with the intrinsic record, including statements made by Wonderland during prosecution in which Wonderland equated the "outwardly facing surface" with the "outside surface" of the tube. Such statements are important in finding the appropriate construction because the prosecution history "inform[s] the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Phillips*, 415 F.3d at 1317 (citations omitted).

No. 2:13-cv-00387

Claim 8 requires an "outer wall" which has an "outwardly facing surface." The phrase "outwardly facing surface" was added to the claims during prosecution. Upon adding this phrase, Wonderland explained to the USPTO that the "outwardly facing surface" was the outer or exterior surface of the upright tube. For example, in a July 19, 2010 Amendment ("July 2010 Amend.") (Exh. B), Wonderland discussed this limitation under the heading "Enclosure Member Out of Contact with Outwardly Facing Surfaces of Tube" and provided an annotated version of Figure 5, reproduced below, in which it analogized the "outwardly facing surface" with the "outside surface" of the tube and identified (using the semi-circle of dots) the outer or exterior surface of the tube as constituting this feature. July 2010 Amend. at 12.



Wonderland then argued that the prior art asserted by the USPTO did not include this feature because, in the prior art, "the enclosure member (i.e., fabric) in each case is stretched over and bears against the outwardly facing surface of the tube." July 2010 Amend. at 13. To further emphasize this point, Wonderland included annotated figures from the two prior art references, reproduced below, again equating the "outwardly facing surfaces" with the "outside"

No. 2:13-cv-00387

surfaces," to illustrate that the enclosure member was stretched over and bears against this outer, or outwardly facing, surface.  *Id.*



In a subsequent submission to the USPTO, Wonderland reiterated the above argument, again providing the USPTO with an annotated version of Figure 5 and stating that "[t]he following explanatory graphic (taken from Figure 5 of the application) shows what is being referred to by 'out of contact' with the outwardly facing surfaces of the tube."  Feb. 28, 2011 Pre-Appeal Brief, at 1-2 (Exh. C).



17

Thorley's position that the outwardly facing surfaces are the outer or exterior surfaces of the tube is entirely consistent with the statements made by Wonderland during prosecution, discussed above. On multiple occasions, Wonderland explained to the USPTO that the prior art did not meet the "outwardly facing surface" limitation because the enclosure member in the prior art stretched onto and was in contact with the exterior or outer surface of the tube whereas, in the claimed invention, the fabric was not in contact with this surface of the upright tube.

Thorley's construction is also consistent with the only disclosed embodiment of the '919 patent. Claim 8 requires that the enclosure member extends between the upright tubes substantially out of contact with the "outwardly facing surfaces" of the upright tubes. As shown in Figure 5 of the '919 patent, reproduced below, the enclosure member (element 2) is out of contact with the outer or exterior surface of the upright tube (element 11).



FIG. 5 (Amended)

Therefore, Thorley's construction is consistent with the intrinsic record, including the specification and prosecution history, and should be adopted by the Court.

Wonderland's construction must be rejected. As an initial matter, it is difficult to understand what construction Wonderland has proposed for this term as Wonderland's definition

relates to the entire phrase.  As best understood, Wonderland contends that the "outwardly facing surface" is a surface of a wall that faces away from the crib.  However, Wonderland takes it even further by arguing that the "outwardly facing surface" need not be a surface of the outer wall, but can be simply a portion of a surface of a portion of a wall.  In effect, and while Wonderland's construction is very confusing, Wonderland appears to be arguing that a mere sliver of a surface on a portion of a tube wall that faces away from the crib can meet this limitation.  But that is not what the claim says.  The claim does not refer to a "portion of" the tube wall or a "portion of" a surface.  Instead, the claim explicitly states that the "outer wall [has] an outwardly facing surface."  Further, during prosecution Wonderland took the Examiner to task for suggesting that an exposure on "any portion" of an outside surface of a tube could meet this limitation.  In particular, Wonderland stated, in response to the Examiner's position that "any exposure of any portion of the outside surface of an upright tube" can meet the outwardly facing surface limitation, that it was "simply not reasonable to construe the limitations … as contemplating anything other [than] an outside surface of the tube that are free of any substantial contact with the fabric or enclosure member."  Feb. 28, 2011 Pre-Appeal Brief at 3.

Finally, Wonderland's "faces away from the crib" language is inconsistent with statements made during prosecution.  Most notably, what Wonderland identified during prosecution as constituting an "outwardly facing surface" does **not** face away from the crib, but instead faces at least partially **toward** the crib.  This is illustrated in the below figure reproduced from the prosecution history where the red arrows are added by Thorley to show the direction the alleged "outside surface" or "outwardly facing surface" is facing (again, the enclosure member is

element 2, the upright tube is element 11, and the dots around the upright tube were added by Wonderland to show what Wonderland considers the "outside surfaces")[5].



July 2010 Amend. at 12; Feb. 28, 2011 Pre-Appeal Brief at 2.

In addition, Wonderland specifically stated during prosecution that, in the prior art references to Colby (US 4,105,244) and Gibbs (US 4,848,843), "the enclosure member (i.e., fabric) in each case is stretched over and bears against the outwardly facing surface of the tube." July 2010 Amend. at 13.  Wonderland thus acknowledged that each of these references includes "outwardly facing surfaces."  However, neither of these references is directed to a crib, and thus the "face away from the crib" language cannot be part of the definition of "outwardly facing surfaces."  *See* Gibbs (Exh. D) (disclosing a multiple seat chair); Colby (Exh. E) (disclosing a folding chair).

Thus, the correct construction of "outwardly facing surface" is "outer or exterior surface of the tube."

---

[5] Wonderland later amended Figure 5 to change the angle at which the enclosure member exits the upright tube, making the fact that the "outwardly facing surfaces" face **toward** the crib even more pronounced.  *See* '919 patent, FIG. 5.

2.    Outer contour shape

The term "outer contour shape" is comprised of common words, and a layperson could readily understand what is meant by this term.  Accordingly, construction is unnecessary. *Phillips*, 415 F.3d at 1314; *ActiveVideo Networks*, 694 F.3d at 1325-26; *Finjan*, 626 F.3d at 1206-07.

Claim 8 requires a tube with an outer wall that defines an outer contour shape of the tube. The concept of an "outer contour shape" in such context is clear and does not need construction. Further, there is nothing in the intrinsic evidence that would suggest something other than the plain and ordinary meaning should control.  With reference to Figure 5 of the '919 patent, the sole embodiment disclosed shows an upright tube (element 11) whose outer contour shape is defined by the outer wall of the tube.  Frankly, it is difficult to conceive of a better way to describe the concept of an "outer contour shape of the upright tube" than using the very words "outer contour shape."  However, to the extent the Court believes construction is necessary, the Court should adopt Thorley's proposal of "outer shape of the tube," which is consistent with both the intrinsic record and the plain and ordinary meaning of the phrase "outer contour shape."

As best understood, Wonderland's proposed construction fails to give any weight to this term.  Wonderland has asked the Court to construe an entire phrase of the claim, but the entirety of Wonderland's proposed definition appears to relate to the "outwardly facing surface" limitation.  For example, Wonderland's proposed construction does not include any notion of a "contour shape" of the upright tube.  Conflating the "outer contour shape" language with the "outwardly facing surface" language is clearly wrong as these are independent features in claim 8, and each carries some meaning with respect to the claimed invention.  The phrase "outer

contour shape" cannot be read out of the claim.  *Bicon*, 441 F.3d at 950-51.  Thus, Wonderland's position must be rejected.

Accordingly, the Court should decline to construe the term "outer contour shape."

**F.     "configured to lodge into"**

| Thorley's Proposed Construction | Wonderland's Proposed Construction |
| --- | --- |
| shaped to fixedly fit into | shaped to be held in |

The parties' dispute over this term is fairly focused, and centers on what it means to "lodge into."  Thorley proposes a construction that aligns with the plain and ordinary meaning of this term, as confirmed by extrinsic sources, while also staying true to the concepts described in the specification.  Wonderland, on the other hand, offers the overly broad wording "held in," without citing any evidence in support of its position.  Because Thorley's construction is supported by the intrinsic and extrinsic evidence, it should be adopted by the Court.

The disputed phrase appears in claim 8 and defines an aspect of the positioning posts.[6]  In particular, claim 8 requires that the "positioning posts are configured to lodge into the receiving holes for supporting the enclosure member between the upright tubes."  '919 patent, 4:46-50.  Both Thorley and Wonderland agree that "configured to" in this context means "shaped to" so the dispute is over the meaning of "lodge into."

The term "lodge" appears nowhere in the specification and was only added to the claims during prosecution.  However, the term "lodge" is an ordinary English word that has a common and well-understood meaning.  One such definition is "to bring to an intended or a fixed position (as by throwing or thrusting)."    www.merriam-webster.com/dictionary/lodge (last visited

---

[6] A similar phrase, "wherein the positioning posts are lodged inside the upright tubes," appears in claim 15.

October 22, 2013); *see also* www.thefreedictionary.com/Lodge (defining "lodge" as, *inter alia*, "To fix, force, or implant") (last visited October 22, 2013).  Central in this definition is that "to lodge" means to bring to a "fixed" position.  For example, a bullet "lodged" in a wall is fixed in the wall.  Thorley's proposed definition incorporates this idea that the positioning posts which are "configured to lodge into the receiving holes" are shaped to ***fixedly*** fit into the receiving holes, consistent with the dictionary meaning of the word "lodge."

Thorley's proposed definition is also supported by the specification which describes positioning posts that are ***fit*** into the upright tubes in a ***fixed*** manner so as to avoid the need for a screw to secure the enclosure member to the upright tubes of the baby crib.  '919 patent, 1:30-46. More specifically, the specification describes a configuration in which a plurality of positioning posts that are mounted on the fabric member are inserted into the receiving holes in the upright tubes.   '919 patent, 2:39-49.   Because the respective shapes of the positioning posts and the receiving holes complement one another (*see* FIG. 5, showing cylindrical post fitting within cylindrical receiving hole), the fabric member is secured between the tubes and the positioning posts, allowing the fabric member to be positioned fixedly on the bed frame structure without the need for screws or other attachment means.   '919 patent, 3:11-14.   Since it is actually the positioning post (with the fabric member mounted thereon) that is fit into the receiving hole of the upright tube, the positioning post is also fit fixedly into the receiving hole of the upright tube. Otherwise, the fabric member would not be fixed in place through the engagement of the positioning post and upright tube.  Therefore, the most natural reading of the term "configured to lodge into" in view of the intrinsic and extrinsic evidence is that the positioning posts are shaped to "fixedly fit into" the receiving holes.

Wonderland's proposed definition is incorrect because it fails to give sufficient weight to the word "lodge" in the claim. Wonderland has proposed simply that the positioning post be shaped to be "held in" the receiving hole. But there is a difference between an object which is shaped to "lodge into" another object and an object which is shaped to be simply held in another object. To return to the example from before, a bullet "lodged into" a wall is not simply held in the wall, it is fixed there. With respect to the '919 patent, the positioning posts are not simply held in the receiving holes, they are fixed there in order to fix the fabric member in place on the bed frame without the need for an attachment means such as a screw. Moreover, it is the "fit" of the positioning posts in the receiving holes that allows the fabric member to be retained in place. Wonderland's proposed language falls short in capturing the proper meaning of the "lodge into" language. Therefore, it should be rejected.

### G.     The "whereby…" clause

As it does elsewhere, Wonderland again takes an entire phrase of the claim and fundamentally alters its wording and meaning without any reason to do so or support from the intrinsic extrinsic record. The time for claim drafting was during prosecution of this application, not during claim construction. If Wonderland is not satisfied with the wording it chose for the claims, attempting to rewrite the claims during claim construction is not the proper response. *K-2 Corp.*, 191 F.3d at 1364 ("Courts do not rewrite claims; instead, we give effect to the terms chosen by the patentee."). In addition, the disputed clause includes two terms – "upright tube" and "outwardly facing surface" – that are being construed on their own. Construing them again in connection within this larger clause is simply unnecessary. Thus, Wonderland's request that the Court construe this entire phrase should be rejected.

Thorley has parsed the disputed phrase to identify three issues that should be addressed at claim construction.  These issues are addressed below.

| Disputed Clause | Thorley's Proposed Construction | Wonderland's Proposed Construction |
| --- | --- | --- |
| whereby the enclosure member extends from one upright tube generally in directions of other of the upright tubes | *No construction necessary; plain and ordinary meaning applies* | whereby the enclosure member reaches from one tube to another |
| substantially out of contact with | does not bear against | does not bear against any substantial portion |
| such that the outwardly facing surface of each of the upright tubes is exposed on an outside of the enclosure member | Indefinite under 35 U.S.C. § 112<br><br>Alternatively: *No construction necessary; plain and ordinary meaning applies* | so that those surfaces are exposed on the outer periphery of the enclosure |

> 1.   Whereby the enclosure member extends from one upright tube generally in directions of other of the upright tubes

This phrase is comprised of common words, and a layperson could readily understand what is meant by this term.  Accordingly, construction is unnecessary.  *Phillips*, 415 F.3d at 1314; *ActiveVideo Networks*, 694 F.3d at 1325-26; *Finjan*, 626 F.3d at 1206-07.

Wonderland's proposed construction should be rejected for at least three reasons.  First, it is unnecessary because the phrase can be readily understood without construction.  There is nothing in Wonderland's Opening Brief to suggest that this phrase is unclear as written, or that the common English words used therein are being used in anything other than their ordinary manner.  Second, Wonderland provides no citation from the intrinsic or extrinsic record that supports the wording it has selected to replace the claim language.  *See* Pl.'s Brief at 9-12.

Indeed, Wonderland does not discuss this limitation at all.  Finally, Wonderland's construction reads certain concepts out of the claim, broadening the claim without any justification for doing so.  Most notably, the claim as written requires that the enclosure member extends "from one upright tube generally in direction of other upright tubes."  This, of course, requires the enclosure member to extend not just from one tube to another tube, but between one tube and other upright *tubes*" – i.*e.*, more than one tube.  Wonderland's construction ignores this and only requires the enclosure member to reach from one tube to another tube.

Thus, the Court should reject Wonderland's position and decline to construe this phrase.

2.    Substantially out of contact with

While the parties agreed in their LPR 4.2 statement that this term meant "does not bear against," Wonderland has shifted its position slightly to add the phrase "any substantial portion." *Compare* Dkt. No. 31-1 at 3 *with* Pl.'s Br. at 10.  Thorley stands by its position that "substantially out of contact with" means "does not bear against."  Wonderland's new position should be rejected because it would create ambiguity as to what portion of the outwardly facing surface constitutes a "substantial portion."  Further, the embodiment disclosed in Figure 5 of the '919 specification shows an enclosure member that does not bear against any portion of the outwardly facing surface.

3.    Such that the outwardly facing surface of each of the upright tubes is exposed on an outside of the enclosure member

In its Opening Brief, Wonderland questions why Thorley believes this phrase is indefinite.  Pl.'s Br. at 12.  Thorley submits that this phrase is indefinite because it is entirely unclear what it means for the outwardly facing surface to be "exposed on an outside of the *enclosure member*."

The enclosure member of claim 8 surrounds an enclosed space, but it is not the enclosed space itself.  Rather, the enclosure member is the material that creates or defines the enclosed space.  For example, claim 14 further defines the enclosure member as being made of fabric.  When the '919 patent describes the upright tube being exposed, it does so with respect to the enclosed space, not with respect to the enclosure member.  For example, the specification states that "[a]s the outwardly facing surface on each upright tube 11 is exposed outward, an outer contour shape of each upright tube 11 can be substantially visible from the outside of the *enclosed space*."  '919 patent, 3:7-10 (emphasis added).  Language similar to this is used elsewhere in the claims.  For example, claim 1 recites that "the outwardly facing of each of the upright tubes is exposed on an outside of the *enclosed space*."

But that is not what claim 8 recites.  Claim 8 instead states that the outwardly facing surface is exposed on an "outside of the *enclosure member*."  Since the enclosure member is not the enclosed space itself, it is completely unclear how the outwardly facing surface of the upright tube can be exposed on an outside of the enclosure member.  It is even unclear what constitutes an "outside" of the enclosure member.

Section 112 of the United States Patent Act (Title 35 of the United States Code) imposes a requirement that the applicant "particularly point[] out and distinctly claim[] the subject matter which the inventor … regards as the invention."  35 U.S.C. § 112(b).  A fundamental purpose of this requirement is to ensure that the scope of the claims is clear, and thereby serve a notice function by providing clear warning to others as to what constitutes infringement of the patent.  *Halliburton Energy Services, Inc. v. M-1 LLC*, 514 F.3d 1244, 1249 (Fed. Cir. 2008).  Without a clear delineation of the patentee's right to exclude in the form of the claims, "competitors cannot avoid infringement, defeating the public notice function of patent claims."  *Halliburton*, 514 F.3d

at 1249.  Such is the case here, since one cannot determine from the claim language what it means for an outwardly facing surface to be exposed on an "outside of the enclosure member."

Wonderland's proposed construction illustrates why the claim, ***as written***, is indefinite. Wonderland seeks to modify the claim language by replacing the phrase "enclosure member" with the word "enclosure."  Pl.'s Br. at 12.  While this modified language may align more closely with the concept actually disclosed in the specification of the outwardly facing surface being exposed on an outside of the enclosed space, adopting this construction would require the Court to rewrite the claim.  It is not the role of the Court to rewrite the claims, even if necessary to preserve validity.  *Rhine v. Casio, Inc.*, 183 F.3d 1342, 1345 (Fed Cir. 1999); *see also Becton, Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 799 n.6 (Fed. Cir. 1990) ("Nothing in any precedent permits judicial redrafting of claims.").  Thus, the Court should decline Wonderland's invitation to rewrite the claim and should hold that this phrase is indefinite.

However, to the extent the Court believes the claim is sufficiently definite as written, Thorley submits that no construction is necessary since this phrase is composed of common words used in their ordinary manner.  Particularly, Wonderland's proposed "outer periphery of the enclosure" language should be rejected as it finds no support in the intrinsic record and is simply unnecessary.

## IV.    THORLEY'S STATEMENT OF THE ANTICIPATED LENGTH OF TIME NECESSARY TO PRESENT ITS CASE AT THE *MARKMAN* HEARING

Thorley believes that it will be able to present its case in support of its proposed constructions in two hours, including any sur-rebuttal time that may be appropriate in view of Wonderland's rebuttal argument.

No. 2:13-cv-00387

## V.      STATEMENT REGARDING WONDERLAND's EXTRINSIC EVIDENCE

Thorley does not object to the offer of the extrinsic evidence presented by Wonderland in conjunction with its Opening Brief or the use of such evidence by the Court to the extent the Court finds such evidence to be helpful.

## VI.     CONCLUSION

For the foregoing reasons, Thorley's constructions most naturally align with the claims and specification and thus represent how the Court should define the disputed terms.


Dated:  October 24, 2013                                Respectfully submitted,


                                                        */s/ Bryan P. Clark*
                                                        Kent E. Baldauf, Jr.
                                                        PA ID No. 70793
                                                        Bryan P. Clark
                                                        PA ID No. 205708
                                                        Ryan J. Miller
                                                        PA ID No. 208015

                                                        THE WEBB LAW FIRM
                                                        One Gateway Center
                                                        420 Ft. Duquesne Blvd., Suite 1200
                                                        Pittsburgh, PA 15222
                                                        412.471.8815
                                                        412.471.4094 (fax)
                                                        kbaldaufjr@webblaw.com
                                                        bclark@webblaw.com
                                                        rmiller@webblaw.com
                                                        *Attorneys for Defendant*

No. 2:13-cv-00387

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 24th day of October, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

THE WEBB LAW FIRM


*/s/ Bryan P. Clark*
Bryan P. Clark