**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

Wonderland Nurserygoods Co., Ltd.,
Plaintiff,

v.

Thorley Industries, LLC (dba 4Moms)
Defendant

C.A. No.: 2:13-cv-00387

Judge Mark R. Hornak

Electronic Filing

**WONDERLAND'S MEMORANDUM IN SUPPORT OF**

**MOTION FOR SUMMARY JUDGMENT OF NO INVALIDITY**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................ 1

II. THE APPLICABLE LEGAL STANDARDS ...................................................... 5

   A. Summary Judgment ..................................................................................... 5

   B. An *Enhanced* Clear and Convincing Burden Applies When The Challenger is Relying on Cited Art .......................................................................................................... 7

III. ARGUMENT ..................................................................................................... 8

   A. Anticipation (35 USC §102) ....................................................................... 8

      1. Hammil's uprights are not tubes and do not have a "wall". ................... 8

      2. In Bidwell, the structure that Thorley identifies as an "upright tube" is not part of the structural frame. .......................................................... 10

   B. Obviousness ............................................................................................... 14

      1. Thorley's primary references show concepts that the Examiner already fully considered. .................................................................................... 14

      2. Thorley's secondary references show concepts that are fully disclosed in the prior art the Examiner already considered. ................................ 15

      3. Mr. Cuffaro did not even consider the cited art or the file histories that relate to the '919 patent. ................................................................ 19

   C. Objective Evidence of Non-Obviousness ................................................. 21

      1. Copying of the invention ...................................................................... 22

      2. Commercial Success by Wonderland ................................................... 23

      3. Praise of the invention .......................................................................... 23

IV. CONCLUSION .................................................................................................. 24

# TABLE OF AUTHORITIES

Page

## CASES

*Am. Hoist & Derrick Co. v. Sowa & Sons*, 725 F.2d 1350, 1359 (Fed. Cir. 1984) .................7, 8

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) .................................................................................................5, 6

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) .......................................................................................................6

*Eli Lilly & Co. v. Barr Laboratories, Inc.*, 251 F.3d 955, 962 (Fed. Cir. 2001) .........................6

*In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 676 F.3d 1063, 1079 (Fed. Cir. 2012).................................................................21

*Leo Pharmaceutical Products, Ltd. v. Rea*, 726 F.3d 1346 (Fed. Cir. Aug. 12, 2013) ......................................................................................................21

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)..........................................................................6

*Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2245-46, 180 L. Ed. 2d 131 (2011).......................................................................................................7

*National Presto Indus. v. West Bend Co.*, 76 F.3d 1185, 1189 (Fed. Cir. 1996).........................6

*Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1369 (Fed. Cir. 2008) ...............................8

*P&G v. Team Techs., Inc.*, 2014 U.S. Dist. LEXIS 119060 (S.D. Ohio, July 3, 2014) .........................................................................................................3

*Pharmastem Therapeutics, Inc. v. Viacell, Inc.]*, 491 F.3d at 1366 (Fed. Cir. 2007)..................7

*Plantronics, Inc. v. Aliph, Inc.*, 724 F.3d 1343, 1355 (Fed. Cir. 2013) ....................................20

*PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1304 (Fed. Cir. 2008)....................7, 8

*Sciele Pharma, Inc. v. Lupin Ltd.*, 684 F.3d 1253, 1260-1261 (Fed. Cir. 2012) .........................7

*Standard Havens Prods., Inc. v. Gencor Indus.*, 897 F.2d 511, 514 n.3 (Fed. Cir. 1990) .........................................................................................................3

*Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538–39 (Fed. Cir. 1983) .........................20

*Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989)....................................................................6

*Tokai Corp. v. Easton Enters.*, 632 F.3d 1358, 1367 (Fed. Cir. 2011).......................................8

Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc., 699 F.3d 1340 (Fed. Cir. 2012) ................................................................................. 21

Truswall Sys. Corp. v. Hydro-Air Engineering, Inc., 813 F.2d 1207, 1212 (Fed. Cir. 1987) ............................................................................................................ 20

United States v. Paducah Towing Co., 692 F.2d 412, 420-21 (6th Cir. 1982) ............................ 3

VirnetX, Inc. v. Cisco Sys., 2014 U.S. App. LEXIS 17748 (Fed. Cir. Sept. 16, 2014) ................................................................................................................... 8

## STATUTES

35 U.S.C. § 282 ............................................................................................................... 6

35 USC §102 ................................................................................................................... 8

## RULES

Fed. R. Civ. P. 56(a) ...................................................................................................... 5

Fed. R. Evid. 803(8) ...................................................................................................... 2

Wonderland Nurserygoods Co., Ltd. ("Wonderland") submits this memorandum in support of its motion for summary judgment of no invalidity based on Thorley's invalidity contentions, as supported by Daniel Cuffaro, the expert for Defendant, Thorley Industries, LLC ("Thorley").

## I.    INTRODUCTION

The patent-in-suit has a file history that makes it unusually strong.  First, the invention has been scrutinized *multiple times*, including twice by a *team* of *Examiners*.  Second, the invention withstood an all-out attack by Thorley in the form of a Request for *Inter Partes* Reexamination, a procedure in which a party can request that the U.S. Patent Office reject a previously issued patent based on prior art.

Wonderland filed for the parent of the '919 patent, i.e., U.S. Patent No. 6,859,957 (the '957 patent) on April 20, 2004.  The application was examined and granted on March 1, 2005. See Exhibit A and SUF 1 and 2.

On October 26, 2006 (well within the two years allowed by statute for broadening a patent), Wonderland filed an application to reissue the '957 patent, in order to seek broader claims. SUF 3. The prosecution of Wonderland Reissue Patent RE 43,919 (the "'919" patent) demonstrates that the U.S. Patent and Trademark Office ("USPTO") made a very thorough study and investigated the prior art. Exhibits C and D, SUF 4.  From a substantive standpoint, the reissue process began with an initial Office Action dated January 16, 2009, and ended with a Notice of Allowance on November 30, 2012.  SUF 4.  The Patent Office's review involved several written exchanges constituting a vigorous debate (between the Examiner and Wonderland) regarding the patentability of the claims. At one point, a team of three Examiners conferring together worked on the reissue application.  SUF 4, Exhibit D, p. 92.  The result of the reissue process was that several new claims were granted that were very similar to the original claim 1.

The new claims were slightly broader in some respects and slightly narrower in others, but overall the claims contained many of the same basic limitations as the original claims.  SUF 5 and Exhibit E.

Meanwhile, on August 7, 2012, Thorley made an all-out (54 page) attack on the '957 patent with a formal request for *Inter Partes* Reexamination in the USPTO, apparently unaware of the reissue proceeding.  Thorley (the "Third Party Requester") submitted SIX different grounds in support of its attack:

### *Basis for Request for Inter Partes Reexamination*

The Third Party Requestor requests reexamination of claims 1-7 of U.S. Patent No. 6,859,957 (hereafter: "the '957 patent") based upon proposed rejections:

**Ground 1.** Claims 1-7 are obvious under 35 U.S.C. 103(a) over Oliphant in view of Colby.
**Ground 2.** Claims 1, 2, 4, and 5 are obvious under 35 U.S.C. 103(a) over Oliphant in view of Goodman.
**Ground 3.** Claims 1, 2, 4, and 5 are obvious under 35 U.S.C. 103(a) over Oliphant in view of Gaylord.
**Ground 4.** Claims 1-4 are obvious under 35 U.S.C. 103(a) over Oliphant in view of Hood.
**Ground 5.** Claim 1 is obvious under 35 U.S.C. 103(a) over Oliphant in view of Baslow.
**Ground 6.** Claims 1, 2, and 4 are obvious under 35 U.S.C. 103(a) over Oliphant in view of Northrup.

SUF 6.

In a 38-page explanation, the Patent Office decided that Thorley **failed** "to show that there is a reasonable likelihood that the Requestor would prevail with respect to the following proposed rejections of claims 1-7 of the '957 patent."  SUF 8, Exhibit G.  Similar to what happened in the reissue application in which the Examiner conferred with two others, three Examiners jointly made the decision finding Thorley's request inadequate.  SUF 8, Exhibit G.

The relevance of Thorley's failed attempt to have the '957 patent reexamined can hardly be questioned. Exhibit E to this brief is a chart with claim 1 of the '957 patent side-by-side with claim 8 of the '919 patent.  There are only a few minor differences, making the claims similar in scope.  SUF 5.  Thus, it is safe to say that any prior art, or combination of prior art, that would

have invalidated claim 1 of the '957 patent would have had the same impact on claim 8 of the '919 patent.

Opinions from administrative agencies may be properly considered as evidence under *Fed. R. Evid. 803(8)* if the findings are trustworthy and probative of the issues. *P&G v. Team Techs., Inc*., 2014 U.S. Dist. LEXIS 119060 (S.D. Ohio, July 3, 2014) *citing Standard Havens Prods., Inc. v. Gencor Indus.*, 897 F.2d 511, 514 n.3 (Fed. Cir. 1990) and *United States v. Paducah Towing Co.*, 692 F.2d 412, 420-21 (6th Cir. 1982).  Important to note for this case is that the "substantial likelihood of prevailing" required to initiate a reexamination is lower than the "clear and convincing" standard required to prove invalidity at trial.  *Erico International Corporation v. Vutec Corporation*, 516 F. 3d 1350, 1356 (Fed. Cir. 2008).  Thus, because claim 1 of the '957 patent is similar to claim 8 of the '919 patent, the denial by the USPTO of Thorley's request for reexamination is probative of the strength of claim 8.

The invention in this case has been scrutinized, not just once by a single Examiner like most patents, but three times by seven examiners from various sections of the USPTO: 1) by an Examiner as part of the grant of the original '957 patent, 2) by a team of three Examiners that granted the reissued claims of the '919 patent, and 3) by a team of three other Examiners from the Central Reexamination Unit who denied the Thorley request for *Inter Partes* reexamination (with the very best prior art Thorley could muster).   SUF 9.

In its latest attack on the validity of the '919 patent, Thorley is forced to rely on prior art concepts *all of which* have already been considered and rejected by the USPTO.  For example, in its anticipation argument, Thorley relies on the Hammil patent (U.S. Patent 6,098,217), which is listed as a cited reference, and was fully considered by the USPTO as part of the granting process. SUF 10.  Similarly, for its obviousness arguments, Thorley is relying on the following:

| Thorley's Obviousness Arguments ||
| Primary Ref. | In view of Secondary Ref. |
| --- | --- |
| Schettler (2,287,907) | Keiser (1,183,819), or |
| Moltane (2,784,420) | |
| Schweikert (3,173,155) | Johnston (3,875,623), or |
| Gunter  (4,538,309) | Ramey (5,752,297) |
| Hartenstine (6,510,570)[1] | |
| The highlighted references are "cited" and were therefore already considered by the USPTO. ||

Cuffaro Validity Report, Exhibit I, SUF 11.

As will be explained more fully below, each of the "uncited" references upon which Thorley is relying is substantially the same as a cited reference. Thus, both for its anticipation arguments and for its obviousness arguments, Thorley is doing little more than reconstituting or reconfiguring old arguments that the USPTO has already considered and rejected.  Compounding this is a complete absence of any attempt on the part of Thorley's expert to explain why the combinations of art are different from the prior art that the Examiner considered as part of the reissue process. SUF 13.  Mr. Cuffaro does not even try to explain why his combinations of prior art are different from or better than the combinations of prior art that the USPTO considered and rejected when it allowed the '919 patent, and when it denied Thorley's Request for *Inter Partes* Reexamination (Exhibit F). SUF 13.

The '919 patent is directed to a play yard with exposed corner tubes that improve the look and performance of the play yard. SUF 14.  For convenience, the limitations of the only asserted independent claim are numbered 1-7 as follows:

---

[1] Hartenstine was cited in its pre-issued published form, i.e., U.S. 2002/0166170. The drawings and specification of U.S. Patent 6,501,570 correspond fully to U.S. 2002/0166170, and this publication is listed on the face of the issued '570 patent as the pre-issuance published version thereof.

| # | Claim 8 of U.S. Patent RE 43,919 |
|---|---|
| 1 | 8. A baby crib comprising: |
| 2 | a bed frame structure including a plurality of upright tubes, |
| 3 | wherein each of the upright tubes, respectively, includes an outer wall and |
| 4 | a receiving hole extending along a length of the upright tube, the outer wall having an outwardly facing surface and defining an outer contour shape of the upright tube |
| 5 | an enclosure member surrounding an enclosed space adapted for receiving a baby therein and |
| 6 | a plurality of positioning posts provided on the enclosure member at locations corresponding to the upright tubes, wherein the positioning posts are configured to lodge into the receiving holes of the upright tubes for supporting the enclosure member between the upright tubes, |
| 7 | whereby the enclosure member extends from one upright tube generally in directions of other of the upright tubes substantially out of contact with the outwardly facing surfaces of the upright tubes, such that the outwardly facing surface of each of the upright tubes is exposed on an outside of the enclosure member. |

In this brief, Wonderland will explain why Thorley's latest attack on the validity of '919 patent falls short, just as its attack on the '957 patent fell short.

## II.   THE APPLICABLE LEGAL STANDARD

### A.   Summary Judgment

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*

A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L. Ed.

2d 265 (1986).

When the nonmoving party (such as Thorley for purposes of this motion) bears the burden of proving a claim or defense, the moving party (Wonderland) can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. See *Celotex Corp.*, 477 U.S. at 323- 24. If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).  The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See T*a*ylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

When evaluating a motion for summary judgment, the court views the evidence through the prism of the evidentiary standard of proof that would pertain at trial on the merits. *Anderson*, 477 U.S. at 255.  *See also National Presto Indus. v. West Bend Co*., 76 F.3d 1185, 1189 (Fed. Cir. 1996) *citing Anderson*, 477 U.S. at 254 (heightened standard of clear and convincing evidence, which would be party's burden at trial, is to be considered when evaluating sufficiency of evidence on motion for summary judgment).   Under the patent statutes, a patent enjoys a presumption of validity (35 U.S.C. § 282) which can be overcome only through clear and convincing evidence.  *Eli Lilly & Co. v. Barr Laboratories, Inc*., 251 F.3d 955, 962 (Fed. Cir. 2001). "Thus… a moving party seeking a finding of no invalidity must show that the nonmoving

party, who bears the burden of proof at trial, failed to produce clear and convincing evidence on an essential element of a defense upon which a reasonable jury could invalidate the patent. *Id.*

### B.     An *Enhanced* Clear and Convincing Burden Applies When the Challenger is Relying on Cited Art.

"When an attacker simply goes over the same ground travelled by the PTO, part of the *burden* is to show that the PTO was wrong in its decision to grant the patent." *PowerOasis, Inc. v. T-Mobile USA, Inc*., 522 F.3d 1299, 1304 (Fed. Cir. 2008), *quoting Am. Hoist & Derrick Co. v. Sowa & Sons*, 725 F.2d 1350, 1360 (Fed. Cir. 1984) (emphasis in original). The Federal Circuit has explained that: When no prior art other than that which was considered by the PTO examiner is relied on by the attacker, he has the added burden of overcoming the deference that is due to a qualified government agency presumed to have properly done its job, which includes one or more examiners who are assumed to have some expertise in interpreting the references and to be familiar from their work with the level of skill in the art and whose duty it is to issue only valid patents. *Id*. at 1359.

"There is a 'high burden of proof created by the necessary deference to the PTO.' [citation omitted]. This notion stems from our suggestion that the party challenging a patent in court 'bears the added burden of overcoming the deference that is due to a qualified government agency presumed to have done its job.' *Pharmastem* [*Therapeutics, Inc. v. Viacell, Inc.]*, 491 F.3d at 1366 [(Fed. Cir. 2007)]. (internal quotation marks omitted). That high burden is reflected in the clear and convincing evidence burden for proving invalidity." *Sciele Pharma, Inc. v. Lupin Ltd*., 684 F.3d 1253, 1260-1261 (Fed. Cir. 2012); *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2245-46, 180 L. Ed. 2d 131 (2011). (The presumption of validity creates "'a heavy burden of persuasion,' requiring proof of the defense by clear and convincing evidence . . . . [T]he presumption encompassed not only an allocation of the burden of proof but also an imposition of

a heightened standard of proof.").

"[A]lthough the standard of proof does not depart from that of clear and convincing evidence, a party challenging validity shoulders an enhanced burden if the invalidity argument relies on the same prior art considered during examination by the U.S. Patent and Trademark Office ("PTO"). *Tokai Corp. v. Easton Enters.*, 632 F.3d 1358, 1367 (Fed. Cir. 2011). The Federal Circuit has made it clear that, "'[w]hen no prior art other than that which was considered by the PTO examiner is relied on by the attacker, he has the added burden of overcoming the deference that is due to a qualified government agency presumed to have properly done its job.'" *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1304 (Fed. Cir. 2008) (*quoting Am. Hoist & Derrick Co. v. Sowa & Sons*, 725 F.2d 1350, 1359 (Fed. Cir. 1984)).

## III.   ARGUMENT

### A.   Anticipation (35 USC §102)

"A claim is anticipated only if **each and every element** is found within a single prior art reference, arranged as claimed." *VirnetX, Inc. v. Cisco Sys.*, 2014 U.S. App. LEXIS 17748 (Fed. Cir. Sept. 16, 2014)(emphasis added), citing *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1369 (Fed. Cir. 2008).

Thorley's expert, Daniel Cuffaro, contends that two patents anticipate claim 8. Exhibit I, p. 3-8. SUF 15. Those two patents are: Hammil (U.S. Patent 6,098,217) and Bidwell (Patent AU 715,883). Wonderland is entitled to judgment as a matter of law that the asserted claims of the '919 patent are not anticipated, because the two references upon which it relies (Hammil and Bidwell) do not have all of the limitations of those claims.

#### 1.   Hammil's uprights are not tubes and do not have a "wall".

Hammil is a modular fence that has "round posts" as the corner supports. The posts of Hammil are all shown as solid posts. The following figures show the Hammil construction:



Thorely's expert, Daniel Cuffaro, admitted that corner posts of Hammil do not have the walls, an express requirement of two limitations of claim 8, as shown below:

| # | Claim 8 of U.S. Patent RE 43,919 |
|---|---|
| 3 | wherein each of the upright tubes, respectively, **includes an outer wall** and |
| 4 | a receiving hole extending along a length of the upright tube, **the outer wall** having an outwardly facing surface and defining an outer contour shape of the upright tube |

At his deposition, Mr. Cuffaro was asked about a drawing of Hammil's corner post, which he included on "line 5" of p. 4 of his report (i.e., showing the solid form of the corner post), which includes a reproduction (on the left) of a portion of Figure 4 of Hammil '217:



Cuffaro Validity Report, p. 4. Exhibit I, SUF 16.

When asked about the above Figure of Hammil's corner post, Mr. Cuffaro said:

> 11   Q.   Can you point to me where there is a wall in
> 12        the cross-section in line 5?
> 13   A.   No.
> 14   Q.   There's no wall?
> 15   A.   Not in this embodiment.
> 16   Q.   Is there a wall in any of the uprights in
> 17        Hammil?
> 18   A.   There is the wall that encloses the space.
> 19   Q.   No, I meant on the post?
> 20   A.   No.  No.

Cuffaro Dep., p. 36 lines 11-20. Exhibit I, SUF 17.

The drawing of line 5 of the Cuffaro Report is the only embodiment of Hammil; it corresponds to Figures 2, 3, 4, 6 and 11 of the Hammil '217 patent.  Claim 8 of the '919 patent unambiguously requires upright *tubes* with *a wall*.  The term "tubes" appears *eleven times* in claim 8.  Hammil's post is not a tube. SUF 18-19.  In addition, the term "wall," appears in two separate limitations of claim 8 (#3 and #4).   While Mr. Cuffaro dodged the question of whether Hammil's uprights are tubes (which they clearly are not), he flatly admitted that Hammil's posts do not have a wall.  As Mr. Cuffaro admitted, and as logic demands, because Hammil's post is not a tube, it does not have a wall. SUF 17-19.  Therefore, Hammil does not, and cannot, anticipate claim 8 (or claims 9 and 14 which incorporate the limitations of claim 8).

### 2.     In Bidwell, the structure that Thorley identifies as an "upright tube" is not part of the structural frame.

Claim 8 says that the claimed invention has a bed frame that includes a plurality of upright tubes.  Wonderland's position is that the phrase in bold below establishes that the tubes must be part of the structural framework of the device:

| # | Claim 8 of U.S. Patent RE 43,919 |
|---|---|
| 1 | 8. A baby crib comprising: |
| 2 | **a bed frame structure including a plurality of upright tubes,** |

In the claim construction briefing, the parties presented their proposed constructions of this limitation as follows:

| Wonderland's position | Thorley's position |
|---|---|
| After flagging the issue with Bidwell that is now before the Court, Wonderland urged the Court to adopt a construction that makes it clear that the upright tubes are structural in nature.<br><br>Wonderland's Opening Brief on Claim Construction, Dkt. 32, p. 8 | *No construction necessary; plain and ordinary meaning applies*<br>However, if construed, this term, "upright tube" should be defined as hollow ***and*** cylindrical.<br><br>Thorley's Opening Brief on Claim Construction, Dkt. 33, p. 11. |

After hearing argument, the Court's ruled as follows:

2) "***a bed frame structure including a plurality of upright tubes***":
   a. The Court's construction – "a bed frame structure including more than one (1) upright tube"

Claims Construction Order (Dkt. 41), p. 1, dated Dec. 19 2013.

By construing the phrase in question with the term "structure" and by not including the word "cylinder", Wonderland believes that the Court sided with Wonderland, and construed the claim as requiring the upright tubes to be part of the structure of the device.  However, even if Wonderland is reading more into the Court's construction than was intended, Wonderland believes that a person of ordinary skill in the art would read limitation #2 in a way that leads to the same conclusion, i.e., the upright tubes must be structural components.

The following questioning of Mr. Cuffaro at his deposition shows a complete absence of any justification or rationale on his part for concluding that the upright tubes need not be structural:

```
17  Q.   Well, no, I'm just asking you to explain to
18       me, based on the claim language and based
19       on -- if you want to refer to the claim
20       construction, please do -- what is the basis
21       for your conclusion that the upright tubes do
22       not have to be structural members?
23  A.   So there's a bed frame structure that includes
24       upright tubes, but it does not define the
25       relationship of those.
```

Page 39

```
1  Q.   Anything else?
2  A.   No.
```

Cuffaro Dep. p. 38-39.  Exhibit L, SUF 20.

Mr. Cuffaro's position is as conclusory as it gets, and cannot support a construction of limitation #2 in any way that does not require the upright tubes to be structural components of the frame.

In lines 2 and 3 on p. 6 of his expert report, Mr. Cuffaro contends that Bidwell's "retaining member 22" meets the limitation #2 of claim 8 calling for a "a bed frame structure including a plurality of upright tubes." SUF 21.  However, in Bidwell the "retaining member 22" is not a structural component and thus is not an "upright tube". SUF 22.  The retainer 22 is only a snap-on clip.  SUF 22.  It is flexible and non-structural, and this can readily be seen and understood from the specification and drawings of the Bidwell reference:

The Bidwell '883 patent describes the retaining member 22 as being similar to a "snap fit". p. Exhibit K, p. 3, lines 16-25. SUF 25.  It also describes the retaining member 22 as "snap fitting" over the corner post 20.  Exhibit K, p. 4, lines 5-15. SUF 26.



Exhibit K, Figures 1 and 2.

Thorley is forced into an untenable position when it tries to match Bidwell with claim 8. While Bidwell *does* have corner tubes, those tubes are covered with fabric (as were most prior art play yards), and this is plainly inconsistent with the rest of claim 8, as it relates to the upright tubes.  To meet claim 8, Thorley cannot call the Bidwell corner posts 20 what they are, i.e., upright tubes, but instead makes two plainly wrong arguments: 1) identifying Bidwell's retainer members 22 as "upright tubes" and 2) referring to Bidwell's real corner tubes as "positioning posts".   Neither of these positions makes any sense. There is an obvious mismatch between Bidwell and claim 8, so Bidwell cannot anticipate.  Bidwell simply does not have upright tubes that meet the limitations of claim 8, for at least the reason that the retaining members 22 of Bidwell are not structural members of Bidwell's bed frame.

**B.    Obviousness**

The following is a summary of Thorley's obviousness arguments.

| Thorley's Obviousness Arguments | |
|---|---|
| Primary Ref. | In view of<br>Secondary Ref. |
| Schettler (2,287,907) | 1,183,819 (Keiser), or<br><br>3,875,623 (Johnston), or<br><br>5,752,297(Ramey) |
| Moltane (2,784,420) | |
| Schweikert (3,173,155) | |
| Gunter  (4,538,309) | |
| Hartenstine (6,510,570) | |
| The highlighted references are "cited" and were therefore already considered by the USPTO. | |

Thorley identifies five main (or primary) references, and combines each of those with three secondary references, in the alternative.  Exhibit I.

**1.    Thorley's primary references show concepts that the Examiner already fully considered.**

Four of the five primary references are listed on the face of the '919 patent as cited references (i.e., Moltane - 2,784,420; Schweikert - 3,173,155; Gunter - 4,538,309; and Hartenstine - 6,510,570), and were therefore fully considered by the USPTO. SUF 12.  Not only were they considered, they are merely examples of the same prior art that was identified in Figure 1 of the '919 patent, i.e., a play yard with fabric walls that wrap around the outer walls of the corner tubes.  Exhibit A, Figures 1 and 2. SUF 28.  The one uncited primary reference (Schettler) is the same as at least one cited reference, Hawley, as shown below:

| Schettler | Hawley |
|---|---|
| Cuffaro's comment:<br>"The method of attaching the canvas panels to the frame is described as "elastic straps 81 to extend around the outer sides of the posts" (s column 3, rows 14-15)<br> | Hawley is essentially the same as Schettler, and Hawley was CITED:<br><br>In Figure 4 I have shown a modified form of one of the upright corners of the playpen. In this case the downturned portion constituting the hem 12a and 13a is made narrower and to lengthen the engagement between each leg and its corner of the fabric, straps 20 and 21 are attached to the fabric at their ends, between which straps and the fabric the leg 4 can pass for the purpose of engaging with and supporting the sides of the playpen. |
| Schettler - U.S. 2,287,907<br>(Exhibit Q) (red circles added) | Hawley - U.S. 2,590,315<br>(Exhibit R)(red circles added) |

Thus, Schettler is really no better than Hawley, which the Examiner cited and considered: Schettler does not make up for any deficiencies in Hawley that prevented the Examiner from using Hawley to reject the '919 patent in the first place.

### 2. Thorley's secondary references show concepts that are fully disclosed in the prior art the Examiner already considered.

While Thorley's secondary references, i.e., Keiser (1,183,819)(Exhibit S), Johnston (3,875,623)(Exhibit T), and Ramey (5,752,297)(Exhibit U), are all technically uncited, the table below shows that there is nothing in these patents that was not in already disclosed in cited patents that the Examiner did consider:



| Cuffaro's Secondary References | Substantially the Same As |
|---|---|
| Keiser | Hood |
| Keiser (U.S. 1,183,819) (Exhibit S) | Hood (U.S. 3,658,025)(Exhibit V) |
| Johnston | Mew |
| Johnston (U.S. 3,875,623) (Exhibit T) | Mew (U.S. 2,761,153)(Exhibit W) |

As can be seen from the above, the Keiser and Johnston references are similar to each other, and are cumulative of (i.e., not meaningfully different from), or are even less relevant than, Hood and Mew, both of which were considered by the USPTO and did not even form the basis of a single rejection.

Thorley, through its expert, Mr. Cuffaro, does not make any attempt to explain why Keiser and Johnson are better or more relevant than Hood or Mew. Thorley does nothing more than make reconstituted arguments based on concepts clearly set forth in the prior art that the USPTO listed as art it considered in granting the '919 patent. This does not even come close to meeting its clear and convincing burden of proof, just as the Hood reference failed to meet the lower standard of creating a likelihood of success in Thorley's reexamination request. See Exhibit G, p. 19-25.

Thorley's last reference, Ramey, is also cumulative with respect to the Northup and Tigrett references, which are examples of cited art that the USPTO fully considered when it granted the reissued '919 patent.



| Cuffaro's Secondary References | Substantially the Same As |
|---|---|
| Ramey<br><br>Ramey (U.S. 5,752,297)(Exhibit U) | Northup<br><br>Northup (U.S. 6,402,116) (Exhibit X)<br><br>Tigrett<br><br>Tigrett (U.S. 2,790,978) (Exhibit Y) |

Ramey shows a generic clip-on fabric holder, and identifies it as being useful for a wide variety of applications:

### BACKGROUND OF THE INVENTION

A variety of different situations exist where a need is presented for attaching flexible sheeting (i.e. plastic, netting, screen material, tarps, cloth etcetera) to an elongate substantially rigid structure such as plastic or metal tubing. For instance, greenhouses, aviaries, shade providing awnings, screen porches, sand blasting rooms, painting rooms, soccer goals, hockey goals, baseball backstops, signs and banners, playground shades and anywhere that elongate tubing is used in conjunction with sheeting material provide applications where sheeting material must be effectively secured to elongate frame elements to form a specific structure.

Ramey, Col. 1 lines 15-26.  SUF 32.

Tigrett, however, shows essentially the same clip structure, but for use in supporting the fabric of a *play pen*.  See Figure 1 of Tigrett showing a play pen, and the explanation of Figure 5 (in the table above) at Tigrett, Col. 2, line 37-40.  SUF 34.  Thus, Tigrett (a reference cited and considered by the USPTO) is *more* relevant than Ramey.  Yet, Thorley and Mr. Cuffaro do not even attempt to explain why Ramey (in combination with other concepts already considered) are better than other cited reference combinations such that they meet Thorley's clear and convincing burden. SUF 35.

In light of the striking similarities between Thorley's "uncited" art and the cited references discussed above, a modified listing of Thorley's obviousness arguments shows that all of the "art" upon which Thorley relies was cited and fully considered by the Examiner:

| Thorley's Obviousness Arguments | |
|---|---|
| Primary Ref. | In view of Secondary Ref. |
| Schettler (2,287,907) = Hawley | Keiser (1,183,819) = Hood and Mew or Johnston (3,875,623) = Hood and Mew Ramey (5,752,297) = Northup and Trigett |
| Moltane (2,784,420) | |
| Schweikert (3,173,155) | |
| Gunter  (4,538,309) | |
| Hartenstine (6,510,570)[2] | |
| The highlighted references are "cited" and were therefore already considered by the USPTO. | |

Thus, all of the combinations upon which Thorley relies for its obviousness attack are combinations of features of the cited art that were fully considered by the USPTO, and not just by a single examiner, but by several examiners.

### 3. Mr. Cuffaro did not even consider the cited art or the file histories that relate to the '919 patent.

Not only does Mr. Cuffaro fail to explain why his prior art is allegedly better than the prior art considered by the USPTO, it is clear that he never even considered the USPTO's cited art in forming his opinions.  When presented with the '919 patent, and asked whether he considered the prior art listed on the front of the patent, he said:

---

[2] Hartenstine was cited in its pre-issued published form, i.e., U.S. 2002/0166170. The drawings and specification of U.S. Patent 6,501,570 correspond fully to U.S. 2002/0166170, and this publication is listed on the face of the issued '570 patent as the pre-issuance published version thereof.

```
 2      (Exhibit No. 3 was marked for identification.)
 3                  - - - -
 4    BY MR. ROCHE:
 5  Q.   Is that the patent that you looked at in
 6        connection with the preparation of Exhibits 1
 7        and 2?
 8  A.   Yes.
 9  Q.   On the front of that, there is a list of
10        several patents and other publications.
11              Do you see that?
12  A.   Yes.
13  Q.   Did you look at any of those?
14  A.   Thanks to Google Docs, it's very easy to click
15        on links, so there are a number of these that
16        I glanced at.  I won't say that I evaluated
17        them in-depth.
```

Cuffaro Dep. at p. 12:2-17, SUF 36.[3]

He also admitted that he did not look at or consider any of the file histories that relate to the '919 patent. SUF 36. Those file histories, including the lengthy exchange leading to the grant of the reissue '919 patent, and the denial of Thorley's reexamination of the parent '957 patent by *three* Examiners are critical to an understanding of what it would take to meet the burden of proof in this case.

Just as important is the fact that Mr. Cuffaro's report does not list *any* of the Hawley, Mew, Hood, Northup or Tigrett patents as materials he considered (i.e., in his APPENDIX F - Sources referenced during the formation of my opinion). SUF 37. Also missing from his list of materials considered is nearly all of the other cited prior art listed on the face of the '919 patent. SUF 38. Thus, Thorley's expert did not even review the prior art already considered by the USPTO, and did not even have the materials that would have enabled him to explain how the

---

[3] Exhibit 3 to the Cuffaro Deposition is the '919 patent -- Exhibit A to this Brief.  Exhibits 1 and 2 to the Cuffaro Deposition are his reports (Exh. 1 - his report on validity, Exhibit D hereto, and Exh. 2 - his response report on infringement).

prior art upon which he relies for anticipation and obviousness is any better than the ground that the USPTO already covered.  For Thorley to take this approach when it had previously been denied a request for reexamination of the '957 patent demonstrates a complete disregard for the enhanced burden of proof it faces in challenging the validity of claim 8 of the '919 patent.

### C.  Objective Evidence of Non-Obviousness

Early in its history, the Federal Circuit determined that objective evidence of non-obviousness (such as praise by others, copying and commercial success) "may be the most probative and cogent evidence in the record." *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538–39 (Fed. Cir. 1983).  *See also Plantronics, Inc. v. Aliph, Inc.*, 724 F.3d 1343, 1355 (Fed. Cir. 2013) (Federal Circuit overturned a district court's judgment of obviousness, finding the district court did not properly consider objective indicia of non-obviousness, including copying and commercial success, saying:   "The significance of this fourth Graham factor cannot be overlooked or be relegated to 'secondary status.'".).  Such factors, sometimes called "secondary," are not less important, but are called secondary because they occur later (or secondary) in time. *See Truswall Sys. Corp. v. Hydro-Air Engineering, Inc.*, 813 F.2d 1207, 1212 (Fed. Cir. 1987) ("That evidence [of purported commercial success] is 'secondary' in time does not mean that it is secondary in importance.").

A number of more recent cases stress the importance of objective evidence of non-obviousness, for example "as a check against hindsight bias." *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 676 F.3d 1063, 1079 (Fed. Cir. 2012); T*ransocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340 (Fed. Cir. 2012)(reversing a district court's finding of obviousness, and finding the case to be "precisely the sort of case where the objective evidence 'establish[es] that an invention appearing to have been obvious in light of the prior art was not.'").  *See also Leo Pharmaceutical Products, Ltd. v.*

*Rea*, 726 F.3d 1346 (Fed. Cir. Aug. 12, 2013).   The following are recognized as objective indicators of non-obviousness.

### 1.      Copying of the invention

#### a.      Thorley copied the exposed tube invention

In early 2011, Thorley had developed the structure of its BREEZE play yard, but had not addressed how the fabric enclosure would attach to the corner uprights. SUF 40.   In March of 2011, representatives of Thorley met with a Chinese manufacturer about possibly making the BREEZE play yard.   SUF 41.   At the time of that meeting, Thorley expected that the fabric attachment for the Breeze would be the "standard version where it wraps around the tube".   SUF 42.   The Chinese manufacturer warned Thorley about a Wonderland patent, i.e., the '957 patent. SUF 41.   After the meeting, Thorley found the '957 patent. SUF 43.    After it located the '957 patent, Thorley had one or more meetings in which the '957 patent was "put on a white board" and Thorley thought of ways to attach fabric while leaving the tube exposed.   SUF  44-45.   While Thorley witnesses testified that they were attempting to avoid the '957 patent, Thorley apparently felt compelled to file a 54-page attack on its validity in the form of a Request for Inter Partes Reexamination. SUF 6.   That request, however, was denied by a team of three Examiners from the Reexamination Unit of the USPTO with a thorough, 38-page explanation. SUF 7.

It is apparent that Thorley copied the exposed-tube concept from the '957 patent when it sat down to figure out a way to attach fabric to its play yard.  Unable to "design around" the patent, Thorley opted to try to invalidate it with a Request for *Inter Partes* Reexamination.  However, that strategy backfired miserably when the USPTO denied Thorley's request.  Thorley has been caught copying the '957 patent, and because its "best shot" at invalidity failed, Thorley is now without any meaningful invalidity defense.

#### b.      Numerous other competitors have copied the exposed-tube concept.

Wonderland has compiled a collection of numerous other play yards that have come out

over the years since Wonderland began supplying Graco with exposed-tube play yards.  SUF 46 and Exhibit H (Response Report on Validity of J. Drobinski and Exh. H to that Report).  The play yards in Exhibit H incorporate the invention of the '919 patent, in that they are play yards in which the uprights are undoubtedly tubular, the uprights support the fabric enclosure, and the uprights are substantially exposed.  These play yards clearly copied the invention of the '919 patent. SUF 47.

### 2.      Commercial Success by Wonderland

Wonderland's initial success with the exposed-tube play yard design was significant. Products that embody claim 8 of the '919 patent were introduced to the market in late 2004, and sales of the patented product were substantial for the years 2005 to 2008 in terms of units sold. SUF 49.

The only real difference between play yards that Wonderland had been selling and the ones listed above is the exposed tube feature, which is the subject of claim 8.  SUF 48.   Thus, the nexus between the commercial success of the exposed tube play yard and the invention of claim 8 is clear.

### 3.      Praise of the invention

When Wonderland fist showed the exposed-tube play yard to Graco in January of 2004, the first words from the mouth of the Graco's Vice President of Marketing Mr. Rich Matthews, were: "ship it".  SUF 50. This spontaneous reaction was clearly an enthusiastic approval of the product's appeal and was an expression of confidence in its probable (and eventual) success.

In summary, if the Court is in any doubt about the weakness of Thorley's reconstituted attack on the validity of the '919 patent, there is strong objective evidence of non-obviousness in the form of: 1) copying of the invention by Thorley; 2) numerous emulators who adopted the exposed tube design following Wonderland's introduction of the first exposed-tube play yard in

late 2004; 3) substantial commercial success of the invention in 2005-2008; and 4) praise for the invention by Graco's VP of Marketing.

## IV.    CONCLUSION

There is no genuine dispute of fact that Thorley will not be able to meet its enhanced burden of proof applicable to its attack on the validity of the '919 patent, and Wonderland asks the Court to dispose of Thorley's completely inadequate claims of invalidity by granting this motion for summary judgment.

**Pursuant to Par. 6 of the Court's Order On Motion Practice, Wonderland requests oral argument on this motion**.

Date:  October 27, 2014

Respectfully submitted,

Local Counsel:

/s/ David I. Roche
David I. Roche (admitted *pro hac vice*)
David.Roche@bakermckenzie.com

Edward I. Levicoff, Esquire
Pa. I.D.#: 200108
ELevicoff@LSandD.net
Levicoff, Silko & Deemer, P.C.
Centre City Tower, Suite 1900
650 Smithfield Street
Pittsburgh, PA 15222-3911
Telephone:    412-434-5200
Facsimile:    412-434-5203

Baker & McKenzie LLP
300 E. Randolph Street, Suite 5000
Chicago, IL 60601
Telephone:      312-861-8608
Facsimile:      312-698-2363

ATTORNEYS FOR PLAINTIFF,
WONDERLAND NURSERYGOODS CO., LTD.

**Exhibit List**

|        | Description                                                                        | Under Seal |
|--------|------------------------------------------------------------------------------------|------------|
| Exh. A: | U.S. Patent RE 43,919                                                              |            |
| Exh. B: | U.S. Patent No. 6,859,957                                                          |            |
| Exh. C: | Transaction History of prosecution of '919 patent                                 |            |
| Exh. D: | Excerpts from File History of the '919 patent                                     |            |
| Exh. E: | Chart comparing claim 1 of the '957 patent to claim 8 of the '919 patent          |            |
| Exh. F: | Thorley's Request for Reexamination of the '957 patent                            |            |
| Exh. G: | Denial of Thorley's Request by USPTO Central Reexamination Unit                   |            |
| Exh. H: | Response Report on Validity of J. Drobinski                                        | X (p. 23)  |
| Exh. I: | Cuffaro Invalidity Report                                                          |            |
| Exh. J: | Hammil (U.S. 6,098,217)                                                            |            |
| Exh. K: | Bidwell (AU 715,883)                                                               |            |
| Exh. L | Deposition of D. Cuffaro, taken Sept. 22, 2014                                      | X          |
| Exh. M | Moltane  (U.S. 2,784,420)                                                          |            |
| Exh. N | Schweikert  (U.S. 3,173,155)                                                       |            |
| Exh. O | Gunter  (U.S. 4,538,309)                                                           |            |
| Exh. P | Hartenstine (U.S. 6,510,570)                                                       |            |
| Exh. Q | Schettler (U.S. 2,287,907)                                                          |            |
| Exh. R | Hawley (U.S. 2,590,315)                                                             |            |
| Exh. S | Keiser (U.S. 1,183,819)                                                             |            |
| Exh. T | Johnston (U.S. 3,875,623)                                                           |            |
| Exh. U | Ramey (U.S. 5,752,297)                                                              |            |
| Exh. V | Hood (U.S. 3,658,025)                                                               |            |
| Exh. W | Mew (U.S. 2,761,153)                                                                |            |
| Exh. X | Northup (U.S. 6,402,116)                                                            |            |
| Exh. Y | Tigrett (U.S. 2,790,978)                                                            |            |
| Exh. Z | 2007 Graco playard instruction book                                                |            |
| Exh. AA | Deposition of Brad Bickley (excerpts)                                              |            |
| Exh. BB | Wonderland Sales data (Bickley Exh. 3)                                             | X          |
| Exh. CC | Dep. of R. Daly (excerpts)                                                         | X          |
| Exh. DD | Dep. of H. Thorne                                                                  | X          |
| Exh. EE | Dep. of J. Rosenthal                                                               | X          |
| Exh. FF | Exhibit 6 to Dep. of R. Daly                                                       |            |

## CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2014, I electronically filed this document with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Kent E. Baldauf, Jr., Esquire kbaldaufjr@webblaw.com
Bryan P. Clark, Esquire bclark@webblaw.com
Ryan J. Miller, Esquire rmiller@webblaw.com

  /s/ David I. Roche
David I. Roche, Baker & McKenzie LLP