IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Wonderland Nurserygoods Co., Ltd., Plaintiff, | C.A. No.: 2:13-cv-00387 |
| v. | Judge Mark R. Hornak |
| Thorley Industries, LLC (dba 4Moms) Defendant | Electronic Filing |

Redacted for Public Filing

**WONDERLAND'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF**

**MOTION FOR SUMMARY JUDGMENT OF NO INVALIDITY**

In accordance with Local Civil Rule 56 and the Practices and Procedures of this Court, Wonderland Nurserygoods Co., Ltd. ("Wonderland") submits this statement of undisputed material facts in support of its motion for summary judgment of no invalidity of U.S. Patent RE 43,919 ("the '919 patent" – Exh. A).  These facts support Wonderland's motion, which is based on the failure of Thorley Industries, LLC ("Thorley") and its expert, Daniel Cuffaro, to overcome the clear and convincing burden of proof needed to invalidate the '919 patent.

**FACTS:**

1.  The '919 patent-in-suit is based on an application that initially resulted in its parent U.S. Patent No. 6,859,957 (the '957 patent). Exhibit A, p. 1. and Exhibit B.

2.  The '957 patent was granted on March 1, 2005.  Exhibit A, p. 1.

3.  On October 26, 2006 (well within the two years allowed by statute for broadening a patent), Wonderland filed an application to reissue the '957 patent, in order to seek broader claims.  Exhibit A, p. 1 and Exhibit D, p. 26, 77, 164.

4.  There were several exchanges between Wonderland's counsel and the USPTO Examiner during the prosecution of the '919 reissue patent, including:

    a.  Office Action dated January 21, 2009 and a response on April 20, 2009;

    b.  Office Action dated June 23, 2009 and a response  on August 28, 2009;

    c.  Office Action dated March 17, 2010 and a response on July 19, 2010;

    d.  Office Action dated December 28, 2010 and a response on Feb. 28, 2011;

    e.  Pre-Appeals Conference Decision to Reopen Prosecution (by three Examiners) on April 19, 2011

    f.  Office Action dated July 12, 2011;

    g.  A Summary of Interview dated August 30, 2011;

    h.  A Response on Oct. 12, 2011;

          i.    Office Action dated May 30, 2013 allowing claims 1-29, and a Respond on July 16. 2012;

          j.    Reasons for Allowance dated November 30, 2012;

          k.    Notice of Allowance date November 30, 2012.

Exhibits C, and Exhibit D.

    5.    Independent claim 1 of the '957 patent is similar in scope to claim 8 of the '919 patent.  Exhibit E, Exhibit H, p. 10

    6.    On August 7, 2012, Thorley filed a Request for Inter Partes reexamination of the '957 patent, and proposed 6 separate grounds, as follows:

### Basis for Request for Inter Partes Reexamination

The Third Party Requestor requests reexamination of claims 1-7 of U.S. Patent No. 6,859,957 (hereafter: "the '957 patent") based upon proposed rejections:

**Ground 1.**  Claims 1-7 are obvious under 35 U.S.C. 103(a) over Oliphant in view of Colby.
**Ground 2.**  Claims 1, 2, 4, and 5 are obvious under 35 U.S.C. 103(a) over Oliphant in view of Goodman.
**Ground 3.**  Claims 1, 2, 4, and 5 are obvious under 35 U.S.C. 103(a) over Oliphant in view of Gaylord.
**Ground 4.**  Claims 1-4 are obvious under 35 U.S.C. 103(a) over Oliphant in view of Hood.
**Ground 5.**  Claim 1 is obvious under 35 U.S.C. 103(a) over Oliphant in view of Baslow.
**Ground 6.**  Claims 1, 2, and 4 are obvious under 35 U.S.C. 103(a) over Oliphant in view of Northrup.

Exhibits F and G, p. 2.

    7.    A team of three USPTO Examiners from the Central Reexamination Unit denied Thorley's Request for Reexamination of the '957 patent in a thirty-eight page explanation. Exhibit G.

    8.    The Examiners of the Central Reexamination Unit determined that Thorley **failed** "to show that there is a reasonable likelihood that the Requestor would prevail with respect to the following proposed rejections of claims 1-7 of the '957 patent."  Exhibit G, p. 37.

9. The invention described in the '919 patent has been scrutinized, not just once by a single Examiner like most patents, but three times by seven examiners from various sections the USPTO:

- **(a)** by an Examiner as part of the grant of the original '957 patent (Exhibit B, p. 1),

- **(b)** by a team of three Examiners that granted the reissued claims of the '919 patent (Exhibit D, p. 92); and

- **(c)** by a team of three other Examiners from the Central Reexamination Unit who denied the Thorley request for *inter partes* reexamination. (Exhibit G p. 38).

10. The Hammil patent (U.S. Patent 6,098,217) is listed as a cited reference on the '919 patent, and was considered by the Examiner on December 290, 2010. Exhibit A, p. 2.; Exhibit D, p. 2, 117, 196.

11. Thorley and its expert are relying on the following obviousness arguments:

| Thorley's Obviousness Arguments ||
|---|---|
| Primary Ref. | In view of Secondary Ref. |
| Schettler (2,287,907) | Keiser (1,183,819), or |
| Moltane (2,784,420) | |
| Schweikert (3,173,155) | Johnston (3,875,623), or |
| Gunter (4,538,309) | Ramey (5,752,297) |
| Hartenstine (6,510,570)[1] | |
| The highlighted references are "cited" and were therefore already considered by the USPTO. ||

Expert Report of D. Cuffaro (Exhibit I, p. 19)

---

[1] Hartenstine was cited in its pre-issuance published form, i.e., U.S. 2002/0166170. The drawings and specification of U.S. Patent 6,501,570 correspond fully to U.S. 2002/0166170, and this publication is listed on the face of the issued '570 patent as the pre-issuance published version thereof.

-3-

12. The Moltane '240, Schweikert '155, Gunter '309 and Hartenstine '570 patent were all considered by the USPTO during the prosecution of the '919 patent on January 14, 2009 and again on December 20, 2010.  Exhibit A, p. 2.; Exhibit D, p. 2, 117, 196.

13. Nowhere in Mr. Cuffaro's report on the alleged invalidity of the '919 patent does he attempt to explain why the prior art upon which he relies is better, or different from, the cited art, including the art submitted by Thorley in its Request for Inter Partes Reexamination of the '957 patent (Exhibit F).  Exhibit I.

14. The '919 patent is directed to a crib or play yard that has exposed corner tubes that improve the performance and appearance of the play yard.  Exhibit A, Col. 1, lines 31-46, Figs. 3-5.

15. Thorley's expert, Daniel Cuffaro, alleges that claims 8, 9 and 14 of the '919 patent are anticipated by two patents, i.e., Hammil (U.S. Patent 6,098,217) (Exhibit J) and Bidwell (Patent AU 715,883)(Exhibit K).

16. In "line 5" of p. 4 of Mr. Cuffaro's report on validity he shows the solid form cross-section of the corner post, which is a reproduction of a portion of Figure 4 of Hammil '217.  Exhibit I, p. 4.

17. In a deposition taken on September 22, 2014, Mr. Cuffaro admitted that the corner posts of Hammil '217 do not have walls. Exhibit L, p. 26:11-20.

18. The corner posts of Hammil '217 are each referred to as a "round post".   Exhibit J, Col. 1 lines 49-50.

19. The corner posts of Hammil '217 are not tubular. Exhibit J, Figures 2, 3, 4 and 6, Drobinski Response Report on Validity, p. 14, Par. A.1.c, Exhibit M.

20. In a deposition taken on September 22, 2014, Mr. Cuffaro could not provide any basis for his conclusion that the upright tubes of claim 8 are not required to be structural members. Exhibit L, p. 38:17-39:2.

21. In lines 2 and 3 on p. 6 of his expert report, Mr. Cuffaro contends that Bidwell's "retaining member 22" meets the limitation #2 of claim 8 calling for a "a bed frame structure including a plurality of upright tubes." Exhibit I, p. 2-3.

22. The Bidwell's part number 22 is a flexible, snap-on retainer and is not a structural upright tube. Drobinski Response Report on Validity, p. 14, Par. A.2, Exhibit M.

23. The retaining members 22 of Bidwell are flexible, and if the retaining members were the corner uprights, the product in the Bidwell patent would be structurally unstable, and would not be suitable for use with infants and toddlers. Drobinski Response Report on Validity, p. 15, Par. A.2, Exhibit M.

24. Figures 1 and 2 of Bidwell AU 715,883 (Exhibit K) show that the retaining members 22 are flexible snap on clips that are not structural. Exhibit K, Figures 1 and 2.

25. Bidwell '883 describes the retaining member 22 as being similar to a "snap fit". p. Exhibit K, p. 3, lines 16-25.

26. Bidwell '883 describes the retaining member 22 as "snap fitting" over the corner post 20. Exhibit K, p. 4, lines 5-15.

27. Figures 1 and 2 of the '919 patent depict an example of prior art play yards in which the fabric enclosure wraps around the corner upright tubes. Exhibit A, Figs. 1-2.

28. The prior art fabric support shown in Figures 1 and 2 of the '919 (Exhibit A) is similar to the wrap-around technique of other prior art play yards, such as Moltane - 2,784,420

(Exhibit M); Schweikert - 3,173,155 (Exhibit N); Gunter - 4,538,309 (Exhibit O); and Hartenstine - 6,510,570 (Exhibit P)

29. The Keiser (U.S. 1,183,819) (Exhibit S) and Johnston (U.S. 3,875,623) (Exhibit T) references are similar to each other, and are cumulative of (i.e., not meaningfully different from), or are even less relevant than, Hood (U.S. 3,658,025) (Exhibit V) or Mew (U.S. 2,761,153)(Exhibit W). Drobinski Response Report on Validity, p. 26, Par. a, and p. 27, Par. d, Exhibit M.

30. Both Hood (U.S. 3,658,025) (Exhibit V) or Mew (U.S. 2,761,153)(Exhibit W) were considered by the USPTO during the prosecution of the '919 patent. Exhibit A, p. 1.

31. Thorley, through its expert, Mr. Cuffaro, does not make any attempt to explain why Keiser (U.S. 1,183,819) (Exhibit S) and Johnston (U.S. 3,875,623) (Exhibit T) are better references or more relevant references than Hood (U.S. 3,658,025) (Exhibit V) or Mew (U.S. 2,761,153)(Exhibit W)

32. The Background of the Invention portion of Ramey (U.S. 5,752,297)(Exhibit U) describes clip-on fabric holder of the invention as being for a wide variety of applications:

> BACKGROUND OF THE INVENTION
>
> A variety of different situations exist where a need is presented for attaching flexible sheeting (i.e. plastic, netting, screen material, tarps, cloth etcetera) to an elongate substantially rigid structure such as plastic or metal tubing. For instance, greenhouses, aviaries, shade providing awnings, screen porches, sand blasting rooms, painting rooms, soccer goals, hockey goals, baseball backstops, signs and banners, playground shades and anywhere that elongate tubing is used in conjunction with sheeting material provide applications where sheeting material must be effectively secured to elongate frame elements to form a specific structure.

Ramey (Exhibit U), Col. 1:14-26.

33. Northup (U.S. 6,402,116)(Exhibit X) and Tigrett (U.S. 2,790,978)(Exhibit Y) are both cited references considered by the Examiner during the prosecution of the '919 patent. Exhibit A, p. 1 (Tigrett) and 2 (Northup)

34. Tigrett shows a clip structure for use in supporting the fabric of a *play pen*. See Figure 1 of Tigrett showing a play pen, and the explanation of Figure 5 at Tigrett, Col. 2, line 37-40 of Tigrett (U.S. 2,790,978)(Exhibit Y).

35. Thorley and Mr. Cuffaro do not even attempt to explain why Ramey (U.S. 5,752,297)(Exhibit U) in combination with other concepts already considered is better than other cited references or combinations thereof. Exhibit I, p. 15 and 19.

36. At his deposition, Mr. Cuffaro admitted that he only "glanced" at some of the cited references, and did not evaluate any of them in depth; and admitted that he did not look at or consider the file histories that relate to the '919 patent. Exhibit L, p. 12: 2-17, 12:25-13:3.

37. Appendix F to Mr. Cuffaro's report on the validity of the '919 patent does not list any of following cited prior art references as among the materials he reviewed in connection with the preparation of his report:

| Exh. R | Hawley (U.S. 2,590,315) |
| Exh. V | Hood (U.S. 3,658,025) |
| Exh. W | Mew (U.S. 2,761,153) |
| Exh. X | Northup (U.S. 6,402,116) |
| Exh. Y | Tigrett (U.S. 2,790,978) |

Exhibit I, Appendix F and Exhibit A, p. 1-2.

38. Appendix F to Mr. Cuffaro's report on the validity of the '919 patent does not list a large majority of the cited references mentioned on p. 1-2 of the '919 patent as among the materials he reviewed in connection with the preparation of his report.

39. Ramey (U.S. 5,752,297)(Exhibit U) is cumulative with respect to the Northup (U.S. 6,402,116)( Exhibit X) and Tigrett (U.S. 2,790,978) (Exhibit Y), which are examples of cited art that the USPTO fully considered as part of the granting of the reissued '919 patent. Drobinski Response Report on Validity, p. 28, Par. d, Exhibit M.

40. As of March of 2011, Thorley had developed the structure of its BREEZE play yard, but had not addressed how the fabric enclosure would attach to the corner uprights. Dep. of H. Thorne, p. 12:6-9 (Exhibit DD); Dep. of J. Rosenthal, p. 7:24-8:9(Exhibit EE); Dep. of R. Daly, p. 85:24-86:1(Exhibit CC).

41. In March of 2011, representatives of Thorley met with a Chinese manufacturer about possibly making the BREEZE play yard, who warned Thorley about a Wonderland patent on fabric attachment, after Thorley said it wanted a fabric attachment that would expose the tubes of the Breeze playard. Dep. of R. Daly, p. 85:19-23 (Exhibit CC).

42. At the time of the meeting with the Chinese manufacturer in March of 2011, Thorley expected that the fabric attachment for the Breeze would be the "standard version where it wraps around the tube", as shown by the attached sketch made by R. Daly:



Dep. of R. Daly, p. 85:1-9; 87:6-10(Exhibit CC), Exhibit 6 to Dep. of R. Daley (Exhibt FF).

43. Thorley located the '957 patent after it met with the Chinese play yard manufacture in March of 2011. Dep. of R. Daly, p. 93:18-21(Exhibit CC).

44. After it located the '957 patent, Thorley had one or more meetings in which the '957 patent was "put on a white board" and Thorley engineers sat around and thought of ways to attach fabric while leaving the tube exposed. Dep. of H. Thorne, p. 14:18-24 (Exhibit DD).

45. Before seeing the '957 patent, Thorley was planning to use a standard "wrap around" technique (on the left below), and during product development meetings in which the '957 patent was on a white board, Thorley engineers came up its current design (on the right below):



| Thorley design *before* referring to the '957 patent | Thorley design *after* referring to the '957 patent (based on Exhibit FF) |
|---|---|

Dep. of R. Daly, p. 84:5-85:9 and 87:6-10(Exhibit CC) and Exhibit 6 to Daly's Deposition (Exhibit FF), and Exhibit I, p.

46. Wonderland has compiled a collection of numerous other play yards that have come out over the years since Wonderland began supplying Graco with exposed tube play yards.

Exhibit H, Drobinski Response Report on Validity, p. 10, and Exh. H to that report (i.e., WL-B-020866- WL-B-020924).

47. The play yards in Exhibit H to the Drobinski Report (Exh. H) incorporate the invention of the '919 patent, in that they are play yards in which the uprights are undoubtedly tubular, the uprights support the fabric enclosure, and the uprights are substantially exposed. Exhibit H, Drobinski Response Report on Validity, p. 10.

48. The main difference between play yards that Wonderland had been selling and the ones listed above is the exposed tube feature, which is the subject of claim 8.


Graco 2003 playard[2]


Graco 2007 playard[3]

http://www.cpsc.gov/en/Recalls/2003/CPSC-Graco-Childrens-Products-Announce-New-Safety-Instructions-to-Prevent-Injuries-with-Portable-Play-Yards-with-Raised-Changing-Tables-/  and Exhibit Z (2007 Graco playard instruction book).

---

[2] http://www.cpsc.gov/en/Recalls/2003/CPSC-Graco-Childrens-Products-Announce-New-Safety-Instructions-to-Prevent-Injuries-with-Portable-Play-Yards-with-Raised-Changing-Tables-/

[3] ©2007 Graco ISPP047AE 7/07 (Exhibit Z)

49. Wonderland first sold play yards with the invention of the '919 patent in late 2004, and sales for subsequent years were:



Deposition of Brad Bickley (Exhibit AA), and Exhibit BB

50. Upon first seeing Wonderland's working prototype of the exposed tube playard, Rich Matthews, Vice President of Marketing for Graco, was quite excited about the new product, and his first words were; "Ship it." Exhibit AA, Dep. of B. Bickley, p. 67:24-71:6.

Date: October 27, 2014                Respectfully submitted,

|  |  |
|---|---|
| Local Counsel: | /s/ David I. Roche<br>David I. Roche (admitted *pro hac vice*)<br>David.Roche@bakermckenzie.com |
| Edward I. Levicoff, Esquire<br>Pa. I.D.#: 200108<br>ELevicoff@LSandD.net<br>Levicoff, Silko & Deemer, P.C.<br>Centre City Tower, Suite 1900<br>650 Smithfield Street<br>Pittsburgh, PA 15222-3911<br>Telephone:  412-434-5200<br>Facsimile:   412-434-5203 | Baker & McKenzie LLP<br>300 E. Randolph Street, Suite 5000<br>Chicago, IL 60601<br>Telephone:   312-861-8000<br>Facsimile:    312-861-2899<br><br>ATTORNEYS FOR PLAINTIFF,<br>WONDERLAND NURSERYGOODS CO., LTD. |

**CERTIFICATE OF SERVICE**

I hereby certify that on October 27, 2014, I electronically filed this document with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Kent E. Baldauf, Jr., Esquire kbaldaufjr@webblaw.com
Bryan P. Clark, Esquire bclark@webblaw.com
Ryan J. Miller, Esquire rmiller@webblaw.com

      /s/ David I. Roche
     David I. Roche, Baker & McKenzie LLP