# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WONDERLAND NURSERYGOODS CO., LTD., | ) | Civil Action |
| | ) | |
| | ) | No. 2:13-cv-00387 |
| Plaintiff, | ) | |
| | ) | Judge Mark R. Hornak |
| v. | ) | |
| | ) | |
| THORLEY INDUSTRIES LLC (*d/b/a* 4MOMS), | ) | ***Electronically Filed*** |
| | ) | |
| | ) | |
| Defendant. | ) | |

## THORLEY INDUSTRIES LLC'S OPPOSITION TO WONDERLAND'S MOTION FOR SUMMARY JUDGMENT OF NO INVALIDITY

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION .................................................................................... 1

II.     LEGAL STANDARD ............................................................................. 2

III.    ARGUMENT ......................................................................................... 2

        A.      The Procedural History of the '957 Patent is Irrelevant .................................... 2

        B.      Wonderland Misstates the Significance of Thorley's Reliance
                On Cited Art ............................................................................................ 4

        C.      Wonderland Is Not Entitled to Summary Judgment
                on Thorley's Anticipation Defense ........................................................... 7

                1.      U.S. Patent No. 6,098,217 to Hammil ........................................ 7

                2.      Australian Patent No. 715,883 to Bidwell ................................. 10

        D.      Wonderland Is Not Entitled to Summary Judgment on
                Thorley's Obviousness Defense ................................................................ 13

                1.      Thorley Will Show that the Claimed Invention is Obvious ...................... 13

                2.      The PTO Has Not Considered All of the Evidence ................................. 14

                3.      Wonderland's Claims of Secondary Considerations Are Unsupported ..... 15

IV.     CONCLUSION ..................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)....................................................................................................... 2

*Broussard v. Go-Devil Mfg. Co. of La.*, No. 3:08-CV-00124-BAJ,
   2014 WL 3377708 (M.D. La. July 9, 2014) .............................................................. 6

*Chore-Time Equip., Inc. v. Cumberland Corp.*,
   713 F.2d 774 (Fed. Cir. 1983)..................................................................................... 2

*Cooper v. Ford Motor Co.*,
   748 F.2d 677 (Fed. Cir. 1984)..................................................................................... 2

*CreAgri, Inc. v. Pinnaclife, Inc.*,
   579 F. App'x 1003 (Fed. Cir. 2014) .......................................................................... 7

*CreAgri, Inc. v. Pinnaclife, Inc.*, No. 11-CV-6635-LHK,
   2013 WL 6673676 (N.D. Cal. Dec. 18, 2013)........................................................... 7

*Delta Frangible Ammunition, LLC v. Sinterfire, Inc.*,
   663 F.Supp.2d 405 (W.D.Pa. 2009)........................................................................... 6

*Electro Med. Sys., S.A. v. Cooper Life Scis.*,
   34 F.3d 1048 (Fed. Cir. 1994)..................................................................................... 8

*IPXL Holdings, L.L.C. v. Amazon.com, Inc.*,
   430 F.3d 1377 (Fed. Cir. 2005)................................................................................... 6

*Iron Grip Barbell Co. v. USA Sports, Inc.*,
   392 F.3d 1317 (Fed. Cir. 2004)................................................................................. 17

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
   481 F.3d 1371 (Fed. Cir. 2007)................................................................................... 6

*Medtronic Inc. v. Intermedics, Inc.*,
   799 F.2d 734 (Fed. Cir. 1986)..................................................................................... 6

*Microsoft Corp. v. i4i Ltd. P'ship*,
   131 S.Ct. 2238 (2011)............................................................................................. 2, 5

*Novo Nordisk A/S v. Caraco Pharm. Labs., Ltd.*,
   719 F.3d 1346 (Fed. Cir. 2013)................................................................................... 5

*Only The First, Ltd. v. Seiko Epson Corp.*,
    822 F.Supp.2d 767 (N.D. Ill. 2011) ....................................................................... 6

*Ormco Corp. v. Align Tech., Inc.*,
    463 F.3d 1299 (Fed. Cir. 2006).......................................................................... 17

*OSRAM Sylvania, Inc. v. American Induction Techs., Inc.*,
    701 F.3d 698 (Fed. Cir. 2012) ............................................................................ 5

*Pfizer, Inc. v. Apotex, Inc.*,
    480 F.3d 1348 (Fed. Cir. 2007)............................................................................ 6

*Sciele Pharma Inc. v. Lupin Ltd.*,
    684 F.3d 1253 (Fed. Cir. 2012)............................................................................ 5

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*,
    699 F.3d 1340 (Fed. Cir. 2012)......................................................................... 18

*Wyers v. Master Lock Co.*,
    616 F.3d 1231 (Fed. Cir. 2010)......................................................................... 17

**STATUTES**

35 U.S.C. § 282 ............................................................................................................ 2

**RULES**

Fed.R.Civ.P. 56(a) ...................................................................................................... 2

On October 27, 2014, Plaintiff Wonderland Nurserygoods Co., Ltd. ("Wonderland") submitted a Motion for Summary Judgment of No Invalidity (Dkt. 72) and accompanying Memorandum in support thereof (Dkt. 73) ("Pl. Memo."). For the reasons that follow, Defendant Thorley Industries LLC *d/b/a* 4Moms ("Thorley") opposes Wonderland's motion and requests that it be denied.

## I.     INTRODUCTION

Wonderland has not established that the asserted claims of U.S. Patent No. RE43,919 ("the '919 Patent") (Ex. A)[1] are valid as a matter of law.  Wonderland's motion and supporting memorandum are laced with disputed facts, conclusory statements, and legally irrelevant arguments that fall far short of establishing that no reasonable jury could return a finding in Thorley's favor on this issue.  Indeed, the vast majority of Wonderland's memorandum is spent on the proposition that Thorley cannot rely on the same prior art references and "concepts" that were the subject of the initial examination of the '919 Patent before the United States Patent and Trademark Office ("PTO") even though most of Thorley's prior art was not before the PTO and, even if it was, patents are routinely invalidated based on prior art that was already considered during prosecution.  What is more, Wonderland's attempt to buttress the validity of the '919 Patent by referencing the examination and eventual reexamination of its parent, U.S. Patent No. 6,859,957 ("the '957 Patent") (Ex. B), is misplaced if not misleading as the asserted claims of the '919 Patent are, admittedly, significantly different from the claims of the '957 Patent.  Even in those limited instances where Wonderland does attack Thorley's invalidity positions on the merits, Wonderland raises only issues about the scope of the prior art that are clearly in dispute.

---

[1]     Unless otherwise noted, all exhibits hereto ("Ex. _") are attached to the Declaration of Bryan P. Clark filed concurrently herewith.

1

Based on the evidence of record, a reasonable jury could easily find that the asserted claims of the '919 Patent are invalid.  Thus, Wonderland's motion should be denied.

## II.   LEGAL STANDARD

When a party moves for summary judgment, the reviewing court shall grant the motion only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  Thorley, as the non-moving party, can defeat Wonderland's motion by establishing the existence of any genuine issue of material fact.  *Cooper v. Ford Motor Co.*, 748 F.2d 677, 679-80 (Fed. Cir. 1984).  To do so, Thorley "need only present evidence from which a jury might return a verdict in [its] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).  In assessing the sufficiency of the evidence, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255.

Under 35 U.S.C. § 282, an issued patent "shall be presumed valid," but this presumption can be rebutted.  *Chore-Time Equip., Inc. v. Cumberland Corp.*, 713 F.2d 774, 780 (Fed. Cir. 1983).  The presumption of validity found in § 282 is reflected in the standard of proof required to prove invalidity, clear and convincing evidence.  *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S.Ct. 2238, 2245-46 (2011).

## III.   ARGUMENT

### A.   The Procedural History of the '957 Patent is Irrelevant

Throughout its Memorandum, Wonderland makes much of the initial prosecution of the '957 Patent as well as a subsequent request for reexamination of that patent filed by Thorley. The procedural history of the '957 Patent, however, is of no value in assessing whether the asserted claims of the '919 Patent are invalid.  Claims 8, 9, and 14 of the '919 Patent were never considered in connection with the '957 Patent, and were never part of that patent.  The '919

Patent is a reissue of the '957 Patent, and Wonderland admits that it sought reissuance of the '957 Patent in order to seek broader claims than were initially presented in that patent.  *See* Pl. Memo. at 1.  All three of the asserted claims in this case, claims 8, 9, and 14, were added by Wonderland during the broadening reissue process.  *See* Ex. A at 4:37-5:5 (new language appears in italics).  The claims of the '957 Patent are thus different from, and indeed narrower than, the claims of the '919 Patent.  It is axiomatic that prior art which does not invalidate a narrow claim can still invalidate a broader claim.  Since claim 1 of the '957 Patent is narrower than any of the claims asserted in this case, the PTO's opinion regarding the validity of the '957 Patent is of little to no value.

Wonderland asserts that claim 8 of the '919 Patent is "similar to" claim 1 of the '957 Patent, and even goes so far as to claim that "the invention in this case" was scrutinized by an Examiner as part of the grant of the original '957 Patent and by a team of Examiner's who denied Thorley's request for reexamination of the '957 Patent.  Pl. Memo. at 3.  However, it is undeniable that the claims of the '957 Patent included limitations that are not present in the asserted claims of the '919 Patent.  Most significantly, while claim 1 of the '957 Patent required a specific configuration in which the fabric member is "clamped between each of said upright tubes and a corresponding one of said positioning posts," claim 8 of the '919 Patent does not include this "clamping" arrangement.  *See* Dkt. 73, at Ex. E (comparing claim 1 of the '957 Patent to claim 1 of the '919 Patent).  In fact, in order to justify why the '957 Patent should be reissued, the inventor explicitly said that the clamping feature claimed in the '957 Patent was too narrow and that broader claims which did not make reference to this feature (like claim 8 of the '919 Patent) were appropriate.  In the words of the inventor:

> I believe that the claims may be subject to an interpretation which is too narrow, based on the inclusion of limitations regarding the precise mount of the fabric

member, such as the clamping of the fabric member between one positioning post
and one upright tube. I believe that it was an error to have included details, such
as the clamping of the fabric member, and believe that I am entitled to broader
claims that do not make reference to that and other detailed structures.

Ex. C [Oath and Declaration] at ¶ 6.

Regardless of Wonderland's attempts to now characterize claim 1 of the '957 Patent and
claim 8 of the '919 Patent as having "only a few minor differences," the fact is that they are
significantly different.  Moreover, Wonderland's position that "any prior art, or combination of
prior art, that would have invalidated claim 1 of the '957 patent would have had the same impact
on claim 8 of the '919 patent" is contradicted by the record and the inventor's own statements.[2]
Finally, Wonderland's contention that "the invention in this case" was scrutinized during
issuance and reexamination of the '957 Patent is flat wrong since claim 8, as written, was never a
part of the '957 Patent.  At no time during the prosecution of the '957 Patent or the requested
reexamination of the '957 Patent did the PTO consider a claim that omitted the detailed clamping
structure, the removal of which served as the justification for seeking reissuance.

 Accordingly, and contrary to Wonderland's claim, the procedural history of the '957
Patent is of no significance to the validity of the '919 Patent.

**B.      Wonderland Misstates the Extent and Significance of Thorley's Reliance
On Cited Art**

Another of Wonderland's themes is that, because the PTO considered certain prior art
references and "concepts" on which Thorley now relies to invalidate the patent, Thorley faces an
enhanced burden to prove invalidity in this case.  *See, e.g,* Pl. Memo. at 7.  However, the Federal
Circuit has been clear that the fact that a reference has been considered by the PTO does not
elevate the burden that the accused infringer must meet to show that the patent is invalid over

---

[2]       To accept Wonderland's position would mean that the inventor falsely represented that
claims omitting the "clamping" feature would be broader than those including this feature,
seriously jeopardizing the enforceability of the '919 Patent. *See* Ex. C at ¶ 9.

that reference.  *See OSRAM Sylvania, Inc. v. American Induction Techs., Inc.*, 701 F.3d 698, 704-05 (Fed. Cir. 2012) ("While prior consideration of a reference during prosecution may carry some weight, the burden to prove invalidity does not change."); *Sciele Pharma Inc. v. Lupin Ltd.*, 684 F.3d 1253, 1260-61 (Fed. Cir. 2012) (rejecting patentee's contention that a "heightened presumption of validity" attached because the PTO had considered the reference); *Novo Nordisk A/S v. Caraco Pharm. Labs., Ltd.*, 719 F.3d 1346, 1357 (Fed. Cir. 2013) ("No decision of the Supreme Court or this court has ever suggested that there is an added burden to overcome PTO findings in district court infringement proceedings.")  Instead, the fact that references were previously before the PTO goes to the weight the jury might assign to the proffered evidence. *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S.Ct. 2238, 2251 (2011).

In addition, even if certain pieces of prior art were before the PTO during examination, the PTO did not have all of the evidence before it when it granted the '919 Patent.  For example, the prosecution of the '919 Patent was completely *ex parte* and Thorley was not presented with an opportunity to explain why Hammil, for example, anticipated the claims.  In addition, the PTO did not have the benefit of any expert testimony on the issue of validity.  Here, Thorley intends to present the testimony of Mr. Daniel Cuffaro, a professor of industrial design and someone with considerable experience in product design, to describe the prior art from the prosective of one skilled in the art, and explain why a skilled artisan would have found claims 8, 9, and 14 to be anticipated and obvious.  Finally, the majority of references being relied upon by Thorley, including Bidwell (AU Pat. No. 715,883), Keiser (U.S. Pat. No. 1,183,819), Johnston (U.S. Pat. No. 3,875,623), Ramey (U.S. Pat. No. 5,752,297), and Schettler (U.S. Pat. No. 2,287,907) were very clearly ***not*** considered by the PTO during prosecution of the '919 Patent

and are not among the References Considered listed on the face of the '919 Patent. *See* Ex. A, cover page.

In any event, courts have long recognized that the PTO and its examiners are not infallible, and that is why accused infringers are permitted to challenge the validity of an issued patent in court even if that challenge is based on prior art considered during prosecution. Patents are routinely found invalid in the court system based on prior art that was considered during prosecution, sometimes even on summary judgment. *See, e.g., Liebel-Flarsheim Co. v. Medrad, Inc.*, 481 F.3d 1371, 1381 (Fed. Cir. 2007) (affirming summary judgment that accused infringer's prior art patent considered by the PTO anticipated the asserted claims); *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348 (Fed. Cir. 2007) (reversing district court and finding claims to be obvious based on prior art considered during prosecution); *IPXL Holdings, L.L.C. v. Amazon.com, Inc.,* 430 F.3d 1377, 1381 (Fed. Cir. 2005) (affirming summary judgment that asserted claims were anticipated by prior art reference considered by the PTO during prosecution, and even used to initially reject the application claims); *Medtronic Inc. v. Intermedics, Inc.,* 799 F.2d 734, 739-40 (Fed. Cir. 1986) (affirming obviousness finding based on combination of references considered by the PTO); *Delta Frangible Ammunition, LLC v. Sinterfire, Inc*., 663 F.Supp.2d 405, 412 n.6 (W.D.Pa. 2009) (invalidating claims on summary judgment over references considered by the PTO); *Only The First, Ltd. v. Seiko Epson Corp.,* 822 F.Supp.2d 767, 792 (N.D. Ill. 2011) (granting summary judgment that the claims were inherently anticipated by a prior art reference the PTO allowed the claims over); *Broussard v. Go-Devil Mfg. Co. of La*., No. 3:08-CV-00124-BAJ, 2014 WL 3377708, at *23 (M.D. La. July 9, 2014) (claims found invalid as obvious based primarily on prior art that had been considered during reexamination proceeding in which validity was affirmed by the PTO); *CreAgri, Inc. v.*

*Pinnaclife, Inc.*, No. 11-CV-6635-LHK, 2013 WL 6673676, at *9 (N.D. Cal. Dec. 18, 2013) *aff'd*, 579 F. App'x 1003 (Fed. Cir. 2014) (finding, on summary judgment, that asserted claims were anticipated by a reference identified in the specification).

Therefore, while the weight of certain references may be impacted by whether or not those references were considered during prosecution, it by no means follows that, as a matter of law, Thorley will be unable to satisfy its burden of proving invalidity of the '919 Patent at trial based on references considered by the PTO.

## C.   Wonderland Is Not Entitled to Summary Judgment on Thorley's Anticipation Defense

Wonderland's argument as to why it is entitled to summary judgment on anticipation highlight why summary judgment is inappropriate here.   For each of the two references discussed by Wonderland, Hammil and Bidwell, Wonderland questions the presence of only one or two limitations.   And, as explained below, there is considerable evidence from which a reasonable jury could, and indeed should, find that those particular limitations are present in the references.   Accordingly, summary judgment on Thorley's anticipation defense is unwarranted.

### 1.   U.S. Patent No. 6,098,217 to Hammil

Wonderland's only challenge with regard to Hammil is that Hammil's uprights are not tubes and do not have an outer wall.   Pl. Memo. at 8.   However, there is more than enough evidence from which a reasonable jury could, and indeed should, find that Hammil meets both the "upright tubes" and "outer wall" limitations.

Hammil discloses a "modular playpen" in which the side wall panels are connected to a series of "vertical uprights."   Ex. D [Hammil] at, *e.g.*, 1:66-2:5.   The Hammil uprights are depicted as cylindrical with a groove cut therein.   *Id.* at, *e.g.*, 2:21-29.   A beading on the vertical edge of the side wall panel slides within the groove to connect the side wall panel to the vertical

upright. *Id.* at, *e.g.*, 4:6-22.  Figure 1 of Hammil, depicting the modular playpen (10), as well as Figure 3, depicting a side panel (30) connected to the vertical upright (20), are reproduced below:



A reasonable jury could conclude, and should conclude, that the uprights of Hammil are tubes.  From a review of the patent alone, the uprights appear to be tubular in nature.  Further, Thorley's expert, Mr. Cuffaro, has reviewed Hammil and will testify that, in his opinion, the uprights in Hammil constitute tubes.  Cuffaro Decl.[3], Ex. A at 3-5.  While Wonderland and its expert may disagree, at a minimum, this creates a factual dispute that must be resolved by the jury.  In particular, the jury will have to decide, based on the evidence presented to it, whether the vertical uprights of Hammil constitute "upright tubes."  Questions concerning the scope of the prior art, and particularly whether the prior art does or does not contain a certain limitation have long been held to be questions of fact.  *Electro Med. Sys., S.A. v. Cooper Life Scis.,* 34 F.3d 1048, 1052 (Fed. Cir. 1994).  There is a material dispute over whether the uprights in Hammil

---

[3]     Declaration of Daniel F. Cuffaro, which is being submitted concurrently herewith.

constitute tubes, and drawing all reasonable inferences in Thorley's favor, it is clear that a reasonable jury could find that Hammil's "vertical uprights" constitute "upright tubes."

In addition, a reasonable jury could conclude, and should conclude, that the vertical uprights in Hammil contain a wall.  Wonderland's position on this point is unsustainable. Clearly, as shown above, the vertical uprights have an outer wall.  Further, Mr. Cuffaro will testify that, in his opinion, "[t]he [Hammil] patent illustrates upright tubes, which include an outer wall and a groove, or receiving hole, extending along the length of each upright tube." Cuffaro Decl., Ex. A at 3.

In support of its position, Wonderland seizes upon answers given by Mr. Cuffaro to a series of poorly-framed deposition questions posed by Wonderland's counsel.  From a review of the transcript, however, it is clear that Mr. Cuffaro was not contending that the upright itself lacked a wall, but rather that the wall forming the enclosure was not on the upright, which relates to another limitation of the claim.  Ex. E [Cuffaro Depo.] at 26:11-20.  Indeed, in his report, Mr. Cuffaro described the Hammil vertical uprights as having an outer wall, and given what Hammil discloses, Wonderland cannot seriously believe that Mr. Cuffaro was testifying that there is no "wall" on the vertical uprights.  Wonderland's position that the Hammil vertical uprights lack "walls" does not even garner the support of its own expert, Mr. Drobinski, who did not dispute that the uprights of Hammil include an outer wall.  For example, when discussing the alleged shortcomings of Hammil in his report, Mr. Drobinski makes no mention of a lack of an outer wall in the uprights of Hammil.  Ex. F [Drobinski Report] at 13-14.

The evidence related to the question of whether the Hammil uprights include an outer wall is completely one sided in Thorley's favor.  The figures of the Hammil patent clearly depict uprights that have an outer wall, Mr. Cuffaro affirmatively agrees with this position, and Mr.

9

Drobinski does not dispute it.  Frankly, it is unknown how anyone could conclude that the uprights of Hammil lack an outer wall.  Based on this evidence, a reasonable jury easily could conclude that the uprights in Hammil include an outer wall.

Accordingly, there are clear factual disputes concerning the scope of the disclosure of Hammil and a reasonable jury could find that Hammill anticipates claims 8, 9, and 14.  Therefore, Wonderland's motion for summary judgment of validity as it applies to Hammil should be denied.

2.    Australian Patent No. 715,883 to Bidwell

Like with Hammil, Wonderland's argument with respect to Bidwell highlights that there is a genuine factual dispute, making summary judgment inappropriate.

Wonderland raises a single attack on Bidwell:  "the structure that Thorley identifies as an 'upright tube' is not part of the structural frame."  Pl. Memo. at 10.  However, the evidence suggests otherwise.

The claim limitation in question is "a bed frame structure including a plurality of upright tubes," and the Court's construction clarifies that "plurality" means "one or more," but otherwise leaves the original language intact.[4]  Dkt. 41 at 1.  Thus, as construed, the limitation is "a bed frame structure including more than one (1) upright tube."  *Id.*  Wonderland reads the Court's construction as requiring the upright tubes to be part of the structure of the device or a "structural component."  Pl. Memo. at 11.  Thorley disputes that the Court meant that the claim requires anything more than what it says—a bed frame structure including more than one upright tube.

---

[4]      Thorley's proposal for claim construction was that no construction was required (*see* Dkt. 33 at 7) while Wonderland's proposed construction was "a structure that gives shape and strength to a surface upon which a child can sleep or stand and which includes generally vertical hollow supports as structural components."  Dkt. 32 at 8.  Wonderland's belief that the Court "sided with Wonderland" on claim construction is clearly misplaced.  Dkt. 73 at 11.

However, even under Wonderland's reading, Bidwell still discloses upright tubes meeting the claimed limitation.

In particular, Bidwell teaches a "cot" or baby crib having an upper frame, lower frame, corner posts, fabric sidewall, and a retaining member.  Ex. G [Bidwell] at, *e.g.*, Abstract.  Figure 1 of Bidwell, illustrating the upper frame (10), lower frame (12), fabric sidewall (14), corner posts (20), and retaining member (22) is reproduced below:



Thorley contends, and its expert agrees, that the retaining members (22) constitute "upright tubes" as that term is used in the '919 Patent claims.  Cuffaro Decl., Ex. A at 5-8. Indeed, Bidwell repeatedly states that the retaining member is a "tube."  *See, e.g.*, Ex. G at pg. 1-2 ("the retaining member comprising an elongate, substantially cylindrical tube having a tube wall and a substantially cylindrical hollow interior . . . .")  Thorley also contends, and its expert again agrees, that the retaining members of Bidwell are part of the bed frame structure such that Bidwell comprises "a bed frame structure including more than one (1) upright tube," as required by claim 8.  Cuffaro Decl., Ex. A at 5-8.

11

There is substantial evidence to support this conclusion, including the disclosure of Bidwell and the anticipated testimony of Mr. Cuffaro.  Bidwell itself describes the retaining element as being an "elongate, substantially cylindrical tube" that is placed over and at least partially surrounds the corner post so as to apply pressure to the fabric sidewall in order to maintain it under tension.  Ex. G, pg. 2.  Bidwell further describes the retaining member as engaging with the corner post such that the tube wall of the retaining member applies pressure to the fabric sidewall immediately adjacent to the corner post, thereby forcing the fabric sidewall tightly against the corner post.  *Id*., pg. 3.  In view of this teaching in Bidwell, and particularly the function of the retaining member and the manner in which it engages with the corner post in forming the cot, a reasonable jury could (and should) find that Bidwell teaches a bed frame structure comprising a plurality of upright tubes, with the upright tubes being the retaining members.

Wonderland's sole argument against Bidwell is that these tubes (i.e., the retaining members) are not "structural components."  However, this point is incorrect, or at least disputed. First, this is not required by the claims.  Second, as explained above, the retaining member is described as a tube, and is clearly a structure.  Further, since the retaining member engages with the corner posts and secures the fabric sidewall in place, it is also clearly part of the structure of the bed frame.  While Wonderland is certainly entitled to disagree and to present competing evidence on this point, there is more than enough evidence from which a reasonable jury could conclude that this limitation is met by Bidwell, particularly drawing all reasonable inference in Thorley's favor.

Thus, Wonderland's motion for summary judgment as it pertains to Bidwell should be denied as well.

12

**D.    Wonderland Is Not Entitled to Summary Judgment on Thorley's Obviousness Defense**

Wonderland's attack on Thorley's obviousness positions is a curious one.  Rather than dispute the scope of the prior art or the other evidence relied upon by Thorley to establish obviousness, or rebut Thorley's conclusions and reasoning as to why one skilled in the art would have found the claimed invention obvious in view of this evidence, Wonderland focuses almost exclusively on attempting to show that the "concepts" that form the basis for Thorley's positions were already considered by the PTO during prosecution.  But, as explained above, whether or not the PTO considered the "concepts" relied upon by Thorley is not dispositive of the obviousness inquiry.  The Federal Circuit has been clear that the courts do not owe a deference to the fact finding of the PTO, and courts routinely find patents to be invalid over references that were expressly (not just implicitly, like here) considered during prosecution.   Wonderland's conclusion that the '919 Patent is non-obvious as a matter of law because it was allowed by the PTO is unsupported and legally incorrect.  The prior art and expert testimony that Thorley will present to the jury are more than enough to allow the jury to find that claims 8, 9, and 14 would have been obvious to one skilled in the art.

1.    Thorley Will Show that the Claimed Invention was Obvious

The '919 Patent relates to a baby crib or playard and the allegedly inventive aspect described in the '919 Patent relates to the manner in which the fabric enclosure member is connected to the frame of the crib such that the tube is exposed.  Baby playards were invented long ago.  Techniques of attaching fabric to a frame, including the basic technique that is used to attach the fabric to the playard in the '919 Patent, have been around even longer.  This alleged invention was obvious, and Thorley will establish as much at trial.

In support of its position, Thorley is prepared to present the expert testimony of Mr. Cuffaro.  Mr. Cuffaro is a professor of industrial design with many years of experience in the field of product design, including in the context of baby products.  Cuffaro Decl., Ex. A at 1. Mr. Cuffaro will present various examples of baby cribs that predate the '919 Patent by decades. Cuffaro Decl., Ex. A at 30-34.  Mr. Cuffaro will also explain that the technique of attaching the fabric enclosure to the playard frame that is described in the '919 Patent was immediately recognizable to him as a keyhole slot method.  *Id.* at 26.  Mr. Cuffaro will present a number of publications from as far back as 100 years ago in which the keyhole slot method was used in attaching fabric to a rigid structure, in much the same way as is described in the '919 Patent.  *Id.* at 26-29.  Notably, in attacking Thorley's obviousness position, Wonderland does not raise a single point of disagreement with Mr. Cuffaro's application of the prior art or otherwise contend that the references on which he relies fail to teach the limitation which he attributes to them.  Mr. Cuffaro will also detail to the jury the steps and stages of a typical product development process, and explain why one skilled in the art knowledgeable about the prior art and tasked with designing a baby crib would find it obvious to arrive at the claimed design.  Cuffaro Decl., Ex. A at 12-25.

Wonderland is certainly entitled to present competing evidence, including testimony from its own expert, on why the claimed invention is not obvious.  However, this is far from a case where the evidence of validity is so one sided that summary judgment is appropriate.

## 2.   The PTO Has Not Considered All of the Evidence

Wonderland's Memorandum focuses almost exclusively on the premise that the "concepts" on which Thorley relies for obviousness were considered by the PTO.  As already explained, even if Wonderland was successful in establishing that Thorley was relying

exclusively on already-considered prior art, this would still not mean that Wonderland is entitled to summary judgment.  On top of that, however, Wonderland is incorrect that the PTO has already considered, and rejected, Thorley's obviousness positions.

For example, the PTO certainly did not have the benefit of expert testimony when allowing the '919 Patent as part of the *ex parte* application process.  Thus, the insight of Mr. Cuffaro will be considered for the first time by the jury in this case.  By way of another example, the PTO did not consider **any** of the secondary references on which Thorley intends to rely. While Wonderland contends that these secondary references are cumulative, Thorley submits that they are not.  For instance, Wonderland contends that Johnston[5] is "cumulative of" Mew.[6] However, Johnston teaches a general fabric joint, and describes configurations that allow for pieces of fabric to be connected together, including at a corner.  Mew is far more specific, and is directed to a particular configuration of a berth (bed), but does not appear to teach connecting pieces of fabric to one another.  There are numerous other differences between the art being cited by Thorley and that which was considered by the PTO.

Thus, when the PTO issued the '919 Patent, it was on a more limited record than will be presented by Thorley as part of its invalidity case in this litigation.  Wonderland is simply incorrect in suggesting that Thorley is only "reconstituting" old arguments.

3.       Wonderland's Claims of Secondary Considerations Are Unsupported

Wonderland also argues that the alleged objective evidence of non-obviousness further supports its position.  However, Wonderland's position on objective evidence is unsupported and, in many respects, legally irrelevant.  In fact, drawing all reasonable inference in Thorley's favor, Wonderland's objective evidence is completely irrelevant.

---

5       Johnston was Exhibit T to Wonderland's Motion.
6       Mew was Exhibit W to Wonderland's Motion

First, Wonderland alleges that Thorley copied the exposed tube invention.  Pl. Memo. at 22.  The conspiracy truly runs deep with this allegation.  According to Wonderland, "[i]t is apparent that Thorley copied the exposed-tube concept from the '957 patent when it sat down to figure out a way to attach fabric to the play yard."  Pl. Memo. at 22.  This is complete fiction.  As Thorley's CEO testified, Thorley had already envisioned an exposed tube product when it learned of the '957 patent, and had already developed the Breeze when it learned that Graco had an exposed tube product on the market.  Ex. H [Daley Depo.] at 85:1-23; 91:13-20.  Further, a simple comparison of the design of the Breeze (on the left) to what is shown in the '957 Patent (on the right) highlights that the designs could hardly be more different, and are clearly not copies of one another:



Wonderland's second point, that numerous other competitors have copied the exposed-tube concept, fares no better.  Wonderland again relies on conclusory allegations, namely that "[t]hese play yards clearly copied the invention of the '919 patent."  Pl. Memo. at 23.  This is hardly an undisputed fact.  Indeed, there is not a shred of evidence that any alleged competitor

16

actually copied Wonderland's design or that these competitors' products actually practice any claim of the '919 Patent (much less claims 8, 9, and/or 14).  Wonderland's expert freely admitted that he never reviewed these products to determine whether they actually practice the '919 Patent and, at most, he believed that "they *might* infringe the patent."  Ex. I [Drobinski Dep.] at 52:10-20.  Further, "[C]opying requires the replication of a specific product."  *Iron Grip Barbell Co. v. USA Sports, Inc.*, 392 F.3d 1317, 1325 (Fed. Cir. 2004).  Wonderland has made no showing as to what product was allegedly copied.

Next, Wonderland contends that there was "significant" initial success with the exposed tube product and "substantial" sales for the years 2005 and 2008.  Pl. Memo. at 23.  However, even assuming these sales figures do evidence substantial sales (which Thorley disputes), it is well established that "[e]vidence of commercial success . . . is only significant if there is a nexus between the claimed invention and the commercial success."  *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311-12 (Fed. Cir. 2006); *see also Wyers v. Master Lock Co.*, 616 F.3d 1231, 1246 (Fed. Cir. 2010) ("Our case law clearly establishes that the patentee must establish a nexus between the evidence of commercial success and the patented invention.").  Wonderland has not, and cannot, show that products which embody claim 8 of the '919 Patent were commercially successful, or that this success was due to the patented features.  All of the facts which Wonderland alleges to support this theory are disputed by Thorley.

Wonderland next alleges that there was praise for the invention by a Graco executive, and that this "spontaneous reaction was clearly an enthusiastic approval of the product's appeal."  Pl. Memo. 23.  Again, the "facts" which Wonderland alleges in support of this claim are all disputed.  Further, praise for the product as a whole, which is presumably what this Graco executive provided, as opposed to praise for the particular patented feature, is not relevant.

17

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1351 (Fed. Cir. 2012).

In sum, Wonderland's alleged objective evidence of non-obviousness is unsupported and irrelevant and does nothing to further its claim that the invention is valid as a matter of law.

## IV.    CONCLUSION

For the foregoing reasons, Thorley respectfully requests that Wonderland's Motion for Summary Judgment of No Invalidity be denied.  There clearly exist material disputed facts that preclude a finding that claims 8, 9, and 14 are valid as a matter of law.

Dated: December 3, 2014                         Respectfully submitted,

                                                THE WEBB LAW FIRM


                                                s/ *Bryan P. Clark*
                                                Kent E. Baldauf, Jr. (PA ID No. 70793)
                                                Bryan P. Clark (PA ID No. 205708)
                                                Ryan J. Miller (PA ID No. 208015)

                                                One Gateway Center
                                                420 Ft. Duquesne Blvd., Suite 1200
                                                Pittsburgh, PA 15222
                                                412.471.8815/412.471.4094 (fax)
                                                kbaldaufjr@webblaw.com
                                                bclark@webblaw.com
                                                rmiller@webblaw.com
                                                *Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 3rd day of December, 2014, I electronically filed the foregoing **MEMORANDUM IN OPPOSITION TO WONDERLAND'S MOTION FOR SUMMARY JUDGMENT OF NO INVALIDITY** with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all counsel of record.

THE WEBB LAW FIRM

*s/ Bryan P. Clark*_____