IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Wonderland Nurserygoods Co., Ltd., <br> Plaintiff, <br><br> v. <br><br> Thorley Industries, LLC (dba 4Moms) <br> Defendant | C.A. No.: 2:13-cv-00387 <br><br> Hon. Mark R. Hornak <br><br> Electronic Filing |

**WONDERLAND NURSERYGOODS CO. LTD.'S MEMORANDUM IN SUPPORT OF
ITS MOTION FOR RECONSIDERATION OF THE COURT'S AUGUST 21, 2015
<u>OPINION EXCLUDING ITS DAMAGES EXPERT MICHAEL CHASE</u>**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................. 1

II. THE COST IMPACT METHODOLOGY IS WELL ACCEPTED BY COURTS ........... 1

III. THE ENTIRE MARKET VALUE RULE DOES NOT APPLY IN A COST IMPACT ANALYSIS ................................................................................................. 2

IV. THE SCOPE OF THE COURT'S AUGUST 21 ORDER IS EXCESSIVE ..................... 12

V. CONCLUSION ...................................................................................................... 12

## TABLE OF AUTHORITIES

Page

*Apple, Inc. v. Samsung Electronics Co. Ltd.*, 786 F.3d 983 (Fed. Cir. 2015) ............................ 2, 4

*Apple, Inc. v. Samsung Electronics Co. Ltd.*, 11-CV-01846-LHK, 2014 U.S. Dist. LEXIS 17204 (N.D. Cal. Feb. 7, 2014) ................................................................ 4, 5, 6, 9, 11

*Bose, Corp. v. JBL, Inc.*, 274 F.3d 1354 (Fed. Cir. 2001) ............................................................ 11

*Caluori v. One World Technologies, Inc.*, CV 07-2035-CAS, 2012 U.S. Dist. LEXIS 25508 (C.D. Cal. June 4, 2012) ............................................................................... 8

*Comair Rotron, Inc. v. Matsushita Electric Corp. of America*, 85-4308, 1993 U.S. Dist. LEXIS 21500 (D.N.J. May 4, 1993) .................................................................... 5

*Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.2d 1201 (Fed. Cir. 2014) ............................................... 3

*Exmark Mfg. Co. v. Brigges Stratton Power Prods. Group LLC*, 8:10CV187, 2015 U.S. Dist. LEXIS 98295 (D. Neb. July 28, 2015) ........................................................ 3

*In re Pharmacy Benefit Managers Antitrust Litig.*, 528 F.3d 432 (3d Cir. 2009) .......................... 1

*Inline Connection Corp. v. Broadband Technology Innovations, LLC*, 470 F. Supp. 2d 424 (D. Del. 2007) ..................................................................................... 2

*LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51 (Fed. Cir. 2012) .................. 1, 7, 11

*Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009) ......................... 3, 11

*Lucent Technologies, Inc. v. Microsoft Corp.*, 837 F. Supp. 2d 1107 (S.D. Cal. 2011) ..................................................................................................................... 3-4

*Max's Seafood Café v. Quinteros*, 176 F.3d 669 (3d Cir. 1999) .................................................... 1

*ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860 (Fed. Cir. 2010) ............................................... 12

*Riles v. Shell Exploration & Prod. Co.*, 298 F.3d 1302 (Fed. Cir. 2002) ...................................... 2

*Sentius Int'l, LLC v. Microsoft Corp.*, 5:13-cv-00825-PSG, 2015 U.S. Dist. LEXIS 10423 (N.D. Cal. Jan. 27, 2015) ............................................................................... 9-10

*SynQor, Inc. v. Artesyn Technologies, Inc.*, 709 F.3d 1365 (Fed. Cir. 2013) ............................. 7-8

*U.S. v. Solomon*, 11-cr-245, 2013 U.S. Dist. LEXIS 82257 (W.D. Pa. June 12, 2013) ............................................................................................................................. 1

*Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011) ........................................ 11

*VirnetX, Inc. v. Cisco Sys.*, 767 F.3d 1308 1329 (Fed. Cir. 2014) .................................... 7, 10, 11

*Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10 (Fed. Cir. 2012) ................................. 3

*Wi-Lan, Inc. v. Alcatel-Lucent USA Inc.*, 6:10-cv-531, 2013 U.S. Dist. LEXIS
    189551 (E.D. Tex. June 28, 2013) .................................................................................... 8, 12

Plaintiff, Wonderland Nurserygoods Co. Ltd. ("Wonderland") respectfully moves this Court to reconsider and reverse its Opinion dated August 21, 2015 granting Defendant, Thorley Industries LLC's ("Thorley"), motion to exclude the testimony of Wonderland's damages expert, Michael Chase.[1]

## I.     INTRODUCTION

Applying the Federal Circuit's analysis in *LaserDynamics, Inc. v. Quanta Computers, Inc.*, 694 F.3d 51 (Fed. Cir. 2012), this Court ruled that, regardless of the analytical approach chosen by a damages expert, that expert must engage in an apportionment analysis unless the entire market value rule (EMVR) is implicated. ECF 131, at 28-30.

A motion to reconsider must rely on at least one of three grounds: (1) intervening change in controlling law; (2) availability of new evidence not previously available; or (3) to correct a clear error of law or prevent manifest injustice. *Max's Seafood Café v. Quinteros*, 176 F.3d 669 (3d Cir. 1999). This Court has broad discretion over motions to reconsider that pertain to interlocutory orders, and "should exercise that discretion whenever it appears that a previous ruling, even if ambiguous, might lead to an unjust result." *U.S. v. Solomon*, 11-cr-245, 2013 U.S. Dist. LEXIS 82257, at *4-5 (W.D. Pa. June 12, 2013), quoting *In re Pharmacy Benefit Managers Antitrust Litig.*, 528 F.3d 432, 438-39 (3d Cir. 2009). Wonderland respectfully submits that, since argument on the issue, courts have ruled that the Michael Chase's methodology does not require apportionment and, alternatively, the Court's ruling that the cost impact methodology applied by Chase required an apportionment analysis is a manifest error of law.

## II.    THE COST IMPACT METHODOLOGY IS WELL ACCEPTED BY COURTS

The "cost impact", "cost approach", or "design-around cost" analysis is a well-accepted

---

[1] Should the Court deem it helpful, Wonderland is willing to make a proffer of Michael's Chase testimony.

-1-

methodology for determining a reasonable royalty. Using this methodology, an expert determines the cost impact to the defendant of switching to a non-infringing alternative. Factors that inform such an analysis include: (i) the time period to take a redesigned, non-infringing product to market; (ii) the cost of the redesign; and (iii) the cost to the defendant of having its products out of the market during the redesign to market period.

> [T]he Cost Approach is based on the economic principles of substitution and price equilibrium. This approach considers out-of-pocket expenses in addition to risks and other adverse economic impacts associated with alternative technology.

*Inline Connection Corp. v. Broadband Technology Innovations, LLC*, 470 F. Supp. 2d 424, 432, n. 38 (D. Del. 2007.

Courts accept the cost impact approach as a reliable damages methodology. *Riles v. Shell Exploration & Prod. Co.*, 298 F.3d 1302, 1312 (Fed. Cir. 2002) ("Thus, under the constraints of the hypothetical negotiation, the market could not award Riles a royalty for his method divorced of all relation to a potential non-infringing alternative method. The economic relationship between the patented method and non-infringing alternative methods, of necessity, would limit the hypothetical negotiation."), *reh'g denied (en banc)* 2002 U.S. App. LEXIS 21340 (Fed. Cir. Sept. 25, 2002); *Apple, Inc. v. Samsung Electronics Co. Ltd.*, 786 F.3d 983, 1005 (Fed. Cir. 2015) (noting that the expert properly "considered the cost to Samsung of being out of the market long enough to design around the patents, the profits attributable to Samsung's use of the patented technology, and the commercial relationship between the parties" in her reasonable royalty calculation); *Inline Connection*, 470 F. Supp. 2d at 432 (noting that the cost approach is "commonly used by experts to value intangible assets.")

### III. THE ENTIRE MARKET VALUE RULE DOES NOT APPLY IN A COST IMPACT ANALYSIS

A reasonable royalty may be calculated as a lump sum payment or a running payment

that fluctuates depending on the number of infringing units sold (a running royalty). In the case of a running royalty, the royalty is calculated using a royalty base and royalty rate. *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 27-28 (Fed. Cir. 2012), *cert denied* 133 S.Ct. 1291 (2013). "Where multi-component products are involved, the governing rule is that the ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no more." *Exmark Mfg. Co. v. Brigges Stratton Power Prods. Group LLC*, 8:10CV187, 2015 U.S. Dist. LEXIS 98295 (D. Neb. July 28, 2015). An expert can accomplish this apportionment "by careful selection of the royalty base to reflect the value added by the patented feature, where that differentiation is possible; by adjustment of the royalty rate so as to discount the value of a product's non-patented features; or by a combination thereof." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014). The entire market value rule (EMVR) is an exception to the general rule that royalties be based on the smallest saleable patent-practicing unit.

      A lump sum royalty is a fully paid up amount based on expected usage by the infringer. Because parties consider the expected or estimated usage (or, for devices, production) of a given invention during the hypothetical license negotiation, the more frequently inventions are used, the more valuable they generally are and therefore the larger the lump-sum payment. Conversely, a minimally used feature will usually command a lower lump-sum payment. *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1327 (Fed. Cir. 2009), *cert denied*, 560 U.S. 935 (2010). Accordingly, courts have found that "[t]he lump-sum analysis does not require the parties to precisely calculate the use of the patented feature, unlike a running royalty license. In a typical running royalty, the license is tied to the use of the patented feature standing alone or incorporated into other products." *Lucent Technologies, Inc. v. Microsoft Corp.*, 837 F. Supp. 2d

1107, 1113 (S.D. Cal. 2011).

In contrast, a cost impact analysis measures the cost *to the infringer* of being off the market while it develops a non-infringing substitute. This methodology is divorced from the principle that underlies apportionment or the EMVR exception. The damages calculation based on a cost impact analysis has no bearing on total sales volume or price. It examines the cost to the infringer (*i.e.*, what the infringer would be willing to pay based on its cost impact) as opposed to the patent owner's value considerations. Unlike a traditional reasonable royalty calculation, the royalty base is not tethered to per unit sales nor is it tied to the average price at which the infringer ultimately sells the inventory (infringing product). In fact, the cost impact approach excludes consideration of total sales. In a cost impact analysis, the value of the patented invention is measured by the costs to the infringer of designing around that invention.

The distinction between the cost impact approach and other reasonable royalty calculations that solely use profit margins or sales as a royalty base was most recently made clear by the court in *Apple, Inc. v. Samsung Electronics Co. Ltd.*, 11-CV-01846-LHK, 2014 U.S. Dist. LEXIS 17204 (N.D. Cal. Feb. 7, 2014), which ruled that the cost impact (or what it called the "cost approach") methodology does not require apportionment between patented and unpatented features.[2] A copy of the Opinion in attached as Exhibit A. In that case, Apple's expert, Ms. Davis, used both the "cost approach" and the "income approach" to determine a reasonable royalty.

> Using her Cost Approach, Davis calculated Samsung's expected costs of not obtaining a license for each patent (i.e., its costs of being off the market for a period of time and its costs of designing around each of the patented features).

---

[2] That case was affirmed in part, reversed in part, vacated in part and remanded by the Federal Circuit. *Apple*, 786 F.3d 983 (Fed. Cir. 2015). The Federal Circuit upheld the reasonable royalty award. *Id.* at *1005.

-4-

*Id.* at *55-56.[3]

In upholding Davis's reasonable royalty, the court in *Apple* noted that Davis used the cost approach as a "check" on the royalty calculated using the income approach. In so doing, the court also recognized that the cost approach, unlike the income approach, did not require an apportionment analysis. Specifically, the court emphasized that the cost approach examined the costs associated with designing around "*the patents in this case*," suggesting that the cost approach inherently takes into account the value of the patented invention:

> Moreover, Davis's testimony that she used as a check on her proposed royalty rate "the costs to Samsung of being out [of] the market long enough to design around *the patents in this case*," provided yet another indication that she adequately measured the value of the patented features, rather than the unpatented features, in calculating a reasonable royalty.

*Id.* at *62 (emphasis in original). The court continued to distinguish the income approach and apportionment from the cost approach, stating:

> Davis's determination of a royalty rate based on an apportionment of the results of her Income Approach *as well as the cost to Samsung of proceeding without a license to the patented technology (as opposed to a royalty rate that equals a percentage of Samsung's overall revenue for sales of the infringing product)* gave the jury sufficient evidence to account for the unpatented features of the infringing phones.

*Id.* at *62-63 (emphasis provided). Other courts are in accord that cost-based damages methodologies do not implicate EMVR considerations. *Comair Rotron, Inc. v. Matsushita Electric Corp. of America*, 85-4308, 1993 U.S. Dist. LEXIS 21500, at *10 (D.N.J. May 4, 1993) (affirming the special master's rejection of the defendant's argument that the entire market value rule applied in a cost savings analysis).

*Apple* is instructive in that it points out that the principles underlying the EMVR when

---

[3] Davis's "income approach" calculated a royalty using the profits attributable to Samsung's use of the technology. *Apple*, 2014 U.S. Dist. 17204, at *55.

-5-

using sales or profits as a royalty base are not implicated in a cost approach analysis. Wonderland does not take issue with the principle that if a patented feature does not drive sales, a patent owner is not entitled to 100% of margin or sales price. The cost approach analysis is distinct from other royalty calculations however, in that it does not examine the percentage of sales or profits to which a patent owner is entitled. It determines the value of the patented feature by examining the cost impact to the infringer: What is the cost of a redesign? Can the infringer retrofit its product? What inventory is at risk? What is the time frame for a redesign? The expert is not calculating the portion of a sale or profit to which a patent owner is entitled, thus the EMVR does not apply. Moreover, there is no risk of overcompensating the plaintiff, because those losses are adjusted for the design around time. As framed by the court in *Apple*, the cost approach is simply another way to measure the value of the patent to the infringer. 2014 U.S. Dist. LEXIS at *62.

Thorley asserts through its expert that it could redesign a non-infringing product in a limited time frame (the "design around period") at a fixed cost. ECF 109, Ex. A at ¶ 71-82. A fact critical to Chase's analysis is Thorley's concession that it cannot retrofit its inventory to replace the infringing underlying playard structure. *Id.* To avoid infringement, Thorley would have to scrap its inventory and manufacture new playards with non-infringing features. Like Davis, Chase determined the cost to Thorley of being out of the market while it redesigned a non-infringing product. Based on Thorley's estimated design-around period, that cost included: (i) the value of Thorley's at-risk inventory (*i.e.*, new inventory on hand and in transit on the date of first infringement that would otherwise be scrapped), including the margin for that inventory; and (ii) the cost to design-around the patented feature, including margin lost if Thorley discontinued purchases of infringing products while implementing its design-around. ECF 106,

-6-

Ex. B at 8-9.  Chase then grounded that figure in reality by apportioning it to correspond to the amount of time it would take Thorley to sell its infringing inventory.[4]  *Id.* at 10-11.

Chase's cost impact calculation considers only the infringing units that arrived after on or after the date of first infringement from orders in transit and orders that Thorley would make during the design-around period, not all sales of Thorley's infringing product.  None of the accused products purchased and sold by Thorley for the balance of 2013, all of 2014 and 2015 are included in Chase's analysis.  Chase's eventual reasonable royalty conclusion of a monthly lump sum payment has no connection to the overall sales levels that Thorley achieved historically and may achieve in the future – Thorley could triple its sales of the infringing breeze playards and the same monthly royalty amount is returned in Chase's analysis.

Chase's royalty is not tethered to the value of the infringing product in a manner that implicates an apportionment analysis or the entire market value rule.  Simply stated, it is not calculated as a percentage of the entire market value of a playard because the royalty was not "expressly calculated as a percentage of the entire market value of a [multi-component product] rather than a patent-practicing [component] alone." *VirnetX, Inc. v. Cisco Sys.*, 767 F.3d 1308 1329 (Fed. Cir. 2014), quoting *LaserDynamics*, 694 F.3d at 68. Chase's royalty does not depend on the cost at which Thorley sells its infringing playards nor does he use the price of the playard as the royalty base.[5]  *SynQor, Inc. v. Artesyn Technologies, Inc.*, 709 F.3d 1365, 1383 (Fed. Cir. 2013) (ruling that the EMVR does not apply when "SynQor never sought to justify its damages

---

[4] Notably, Thorley's expert also considered the impact on sales during the design-around period, but reached the conclusion that Thorley would not lose any sales. ECF 109, at ¶ 79-82. While Wonderland disputes that conclusion, it is significant that Thorley's expert also employed a cost-impact analysis.

[5] Thorley produced financial records that documented sales through just the first quarter of 2014, so the data does not even exist to base a reasonable royalty on the sales of all the accused Breeze playards. Under Chase's approach, the reasonable royalty amount for further infringing sales in 2014 and 2015 is not based on the sales achieved by Thorley. The reasonable royalty is the same amount per month even if the infringing sales are higher.

figure based on the price of the customer end products."), *cert. denied*, 134 S.Ct. 648 (2013); *Wi-Lan, Inc. v. Alcatel-Lucent USA Inc.*, 6:10-cv-521, 2013 U.S. Dist. LEXIS 189551, at *16 (E.D. Tex. June 28, 2013) (determining a lump-sum royalty based on "a per-unit royalty based on the value of the patent, irrespective of the value of the end product, does not violate the Entire Market Value Rule.")  Stated differently, the price at which Thorley chooses to sell its playards to consumers (what would be the royalty base in a running royalty calculation) has zero impact on Chase's analysis.[6]

Since Chase's royalty calculation includes the alleged design-around cost and inventory/margin impact during the design-around period it is, at a minimum, more akin to the royalty calculation in *Caluori v. One World Technologies, Inc.*, CV 07-2035-CAS, 2012 U.S. Dist. LEXIS 25508, at *18, n. 10 (C.D. Cal. June 4, 2012) where, because the expert's analytical approach was "not limited to a calculation of the total profit generated by [defendant's] allegedly infringing devices, the Court decline[d] to address whether the analysis would otherwise run afoul of the entire market rule." *aff'd* 555 Fed. Appx. 995 (Fed. Cir. 2014), *cert denied*, 135 S.Ct. 213 (2014).  The Court's characterization of Chase's analysis as considering "only the value of the entire Breeze product in determining his suggested reasonable royalty" is incorrect.  ECF 131, at 30.  Chase measured the cost impact to Thorley if it was unable to sell the accused product during the design-around period plus the design around costs.  Having excluded any portion of the Breeze value on products ordered after September 10, 2013, it is not possible that Chase's analysis is based on the entire Breeze product value.

Apportioning the costs attributable to the patented feature or, alternatively, arguing for the application of the EMVR does not apply in this cost impact approach because Chase

---

[6] If Thorley has increased the price of its playards in 2014, 2015 or beyond, the price increase will have no bearing on the fixed monthly reasonable royalty amount determined by Chase.

approaches his damages calculation from the perspective of ***Thorley's cost-impact*** if infringement is found. There is no manner in which to "apportion" the cost impact of Thorley's unusable inventory and lost margins when Thorley cannot retrofit that inventory as part of its design-around process.

The court's ruling on a similar *Daubert* motion in *Sentius Int'l, LLC v. Microsoft Corp.*, 5:13-cv-00825-PSG, 2015 U.S. Dist. LEXIS 10423 (N.D. Cal. Jan. 27, 2015) provides guidance on this issue. A copy of the Opinion is attached as Exhibit B. In *Sentius*, the expert based his damages analysis on the revenue and profit Microsoft would stand to lose if it replaced the [patented features] with the next best and non-infringing alternative that was available to it. *Id.* at *31. Like Thorley, the defendant, Microsoft, characterized the expert's methodology as applying a running royalty rate to the entire portion of the revenue and profit Microsoft would have allegedly lost if it could not use the patented technology. *Id.* at *38. Because the expert admitted that the claimed technology did not drive the demand for the accused products, Microsoft argued that his "income approach" was really a disguised entire market value rule theory.[7] *Id.* at *37-38. The court disagreed and rejected the application of the EMVR precisely because the damages calculation reflected the ***defendant's losses*** absent its ability to use the patent feature.

> This interpretation not only distorts Mills' analysis, but would require exclusion of any damages analysis that is premised on the income approach theory. One can characterize any damages figure calculated under the income approach theory as a percentage of the defendant's total lost profits or revenue. Mills' income approach

---

[7] Although the court in *Sentius* used the term "income approach", it is a distinct methodology from the income approach at issue in the *Apple* case. In *Sentius*, the court used the term to describe a methodology which measured profits and revenue that is associated with sales of the accused products that Sentius contents [*sic*] Microsoft would have lost without the inclusion of the accused features in its products." 2015 U.S. Dist. LEXIS 10423 at *38-39. In contrast, the methodology in Davis's income approach in the *Apple* case, measured the profits attributable to the patented feature. *Apple*, 2014 U.S. Dist. LEXIS 17204.

> theory is not a hidden attempt to avoid the entire market value rule because Mills did not derive damages using [defendant's] revenue and profit from *all sales* of the accused products. Instead, Mills bases damages only upon ***profits and revenue that is associated with sales of the accused products that Sentius contents [sic] [defendant] would have lost*** without the inclusion of the accused features in its products.

*Id.* at *38-39 (emphasis provided). Similarly, Wonderland is not trying to "re-characterize" Chase's royalty analysis. ECF 131, p. 30. Like the expert in *Sentius*, Chase does not base his royalty analysis on sales of all infringing products; instead, he isolates lost revenues and profits (as well as design-around cost and time) stemming directly from the time period needed for a design-around. As the *Apple* and *Sentius* courts make clear, a consideration of lost profits and revenues that does not consider all sales of the accused products does not trigger an EMVR analysis. Had Thorley asserted that it could retrofit its existing inventory with a non-infringing structure (in essence re-using the fabric or any other unpatented mechanism in that inventory), then it would make sense for Mr. Chase to have calculated the cost of that retrofit as part of the cost impact to Thorley. Those are not the facts of this case.

The Court's August 21 ruling cites *VirnetX* for the proposition that "no matter what the form of the royalty, a patentee must take care to seek only those damages attributable to the infringing features."[8] ECF 131, at 30, quoting *VirnetX*, 767 F.3d at 1326. But, Mr. Chase's analysis does not run afoul of that principle. As the court pointed out in *Apple*, Chase "adequately measured the value of the patented features, rather than the unpatented features" by

---

[8] Notably, in *VirnetX*, the expert proposed three reasonable royalty theories. The first applied a 1% royalty rate to the sales price of the subject product based on comparable licenses. The second approach was the Nash Bargaining Solution, which involved determining the profits associated with the use of the patented technology. The third approach was a modified Nash Bargaining Solution methodology, which determined what percent of sales were attributable to the patented technology, the profits associated with those sales, and the percentage of those profits to which VirnetX was entitled. 767 F.3d at 1326. All of those theories used sales or profits as a royalty base. The Federal Circuit applied the EMVR only to the first approach and ruled that the Nash Bargaining Solution was unreliable. *Id.* at 1329-33.

virtue of the fact that the cost approach calculates the costs to the defendant of being out of the market "long enough to design around *the patents in this case*." *Apple*, 2014 U.S. Dist. LEXIS 17204, at *62.  In other words, the crux of Chase's cost impact analysis is the time required to design around the patents.  All other factors are corrected for that time period.  ECF 106, Ex. A, at 13-24 and Ex. B at 10-11.

The cases like *VirnetX* that require an expert to determine the value of the patented features versus the unpatented features are all cases involving a running royalty, where the royalty base or rate either did, or did not, comport with that requirement.  There is not a single reported decision where a district court or the Federal Circuit required any kind of apportionment and applied the EMVR to a cost impact analysis. *See VirnetX*, 767 F.3d at 1325 (calculating running royalty using sales price of product as a royalty base); *LaserDynamics*, 694 F.3d at 67-68 (per unit running royalty based on sales price); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318-19 (Fed. Cir. 2011) (expert used total revenues of product as a check on royalty rate), *reh'g denied (en banc)*, 420 Fed. Appx. 992 (Fed. Cir. 2011); *Lucent*, 580 F.3d at 1338-39 (inflating the royalty rate to compensate for a lower royalty base in a running royalty calculation); *Bose, Corp. v. JBL, Inc.*, 274 F.3d 1354, 1361 (Fed. Cir. 2001) (EMVR applied to running royalty calculation using the entire sales price as the royalty base), *cert denied*, 537 U.S. 880 (2002).

Chase did not use the price of the Breeze as a royalty base.  The danger of overcompensating a plaintiff that gives rise to the EMVR is not present here.  Chase's damages calculations properly take into account the value of the patented feature to Thorley by examining the cost to Thorley of redesigning its playard.  In so doing, Chase's methodology is consistent with the requirement that a patentee "carefully tie proof of damages to the claimed invention's

footprint in the market place." *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010), *reh'g denied (en banc)*, 2010 U.S. App. LEXIS 7935 (Fed. Cir. Mar. 31, 2010).

## IV.   THE SCOPE OF THE COURT'S AUGUST 21 ORDER IS EXCESSIVE

As part of his reasonable royalty analysis, Chase examined the *Georgia-Pacific* factors in detail.  ECF 106, Ex. A at 13-24 and Ex. B at 12-13.  Thorley did not raise, and this Court did not rule on, the issue of whether Chase's *Georgia-Pacific* analysis was so methodologically flawed as to merit exclusion.  Certainly there can be no question that the *Georgia-Pacific* analysis is a well-accepted methodology.  Despite this fact, the Court excluded Chase's opinion in its entirety.

Wonderland submits that this Court's order exceeded the scope of Thorley's Motion for the reason that Chase's analysis of the *Georgia-Pacific* factors is separable from application of the cost approach.   To the extent that this Court denies Wonderland's Motion for Reconsideration, Wonderland requests that this Court permit Chase to offer opinions as to the *Georgia-Pacific* factors and their impact on a reasonable royalty in this case.  To the extent that such a ruling requires Chase to amend his Report, Wonderland submits that this Court has the authority to permit Chase to do so.  *Wi-Lan*, 2013 U.S. Dist. LEXIS 189551, at *19 (ruling that the expert's report violated the EMVR, but that the expert could amend his report, be deposed and that the defendant could file a supplemental report, if necessary).

Finally, the Court's ruling does not contemplate a scenario in which the defendant calls its damages expert, Mark Gleason to testify.  Should the Defendants decide to call Mr. Gleason as a damages witness, Wonderland submits that it be permitted to call on Mr. Chase to rebut that damages testimony in its rebuttal case.

## V.   CONCLUSION

WHEREFORE, Wonderland Nurserygoods Co. Ltd. respectfully requests that this Court

reverse its ruling excluding Michael Chase from testifying at trial in this matter or, alternatively, allow Michael Chase to testify as to the *Georgia-Pacific* analysis in his expert report and amend his royalty calculation in accordance with a *Georgia-Pacific* reasonable royalty methodology.

Date:  September 17, 2015

Local Counsel:

Edward I. Levicoff, Esquire
Pa. I.D.#: 200108
ELevicoff@LSandD.net
Levicoff, Silko & Deemer, P.C.
Centre City Tower, Suite 1900
650 Smithfield Street
Pittsburgh, PA 15222-3911
Telephone:    412-434-5200
Facsimile:    412-434-5203

Respectfully submitted,

/s/ David I. Roche
David I. Roche (admitted *pro hac vice*)
David.Roche@bakermckenzie.com

Baker & McKenzie LLP
300 E. Randolph Street, Suite 5000
Chicago, IL 60601
Telephone:    312-861-8608
Facsimile:    312-698-2363
ATTORNEYS FOR PLAINTIFF,
WONDERLAND NURSERYGOODS CO., LTD.

**CERTIFICATE OF SERVICE**

I hereby certify that on September 17, 2015, I electronically filed this document with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Kent E. Baldauf, Jr., Esquire kbaldaufjr@webblaw.com
Bryan P. Clark, Esquire bclark@webblaw.com
Ryan J. Miller, Esquire rmiller@webblaw.com

　　　　　　　　　　　　　　　　　　　　 /s/ David I. Roche
　　　　　　　　　　　　　　　　　　　David I. Roche, Baker & McKenzie LLP