IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WONDERLAND NURSERYGOODS CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> THORLEY INDUSTRIES LLC (*d/b/a* 4MOMS), <br><br> Defendant. | Civil Action No. 2:13-cv-00387 <br><br> Judge Mark R. Hornak |

## MEMORANDUM OPINION

**Mark R. Hornak, United States District Judge**

This is (still) a patent case about a baby crib. On August 28, 2015 this Court issued an Opinion on various Motions for Summary Judgment and Motions in Limine. Soon after, Wonderland petitioned the Court to reconsider one aspect of its opinion: the exclusion of Wonderland's damages expert, Michael Chase. This court has reconsidered the issue, but reaches the same conclusion. As such, Wonderland's Motion for Reconsideration is denied.

The purpose of a motion for reconsideration "is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir.1985). "Accordingly, a judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion . . . or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).

1

Wonderland asserts that there has been an intervening change in the law, ECF 138 at 5, but its arguments to this end really speak to the third ground for reconsideration—the need to correct an error in the prior opinion.[1] Wonderland cites two district court cases that, it says, show that an apportionment procedures is not required under a "cost impact" methodology[2]: *Apple, Inc. v. Samsung Electronics. Co. Ltd.*, Case No. 11-CV-01846-LHK, 2014 WL 549324 (N.D. Cal. Feb. 7, 2014)[3] and *Sentius Int'l, LLC v. Microsoft Corp.*, No. 5:13-CV-00825-PSG, 2015 WL 451950, at *1 (N.D. Cal. Jan. 27, 2015). These cases may aid this Court's assessment of whether there was a "clear error of law or fact" in the August 28th opinion, but they do not represent "an intervening change in the controlling law." *Quinteros*, 176 F.3d at 677. For one, both cases were decided at the time the Court issued its August 28, 2015 Opinion. Further, both cases are district court opinions; while this court will consider the decisions of its fellow district courts—even decisions rendered outside of our own Circuit, as these two were—it is not bound by their holdings or conclusions, so they are not "controlling law."

As such, this Court is left to consider only whether the August 28, 2015 opinion contains a "clear error of law or fact" or causes "manifest injustice." Simply put, the Court must decide whether it was really wrong before. I do not think that I was.

Wonderland's primary contention is that the cost impact approach utilized by the excluded expert involves a "reliable damages methodology." And, indeed, on this point and to

---

[1] Wonderland does not assert that there is any newly available evidence. We agree.

[2] We should be clear about what that means. A cost impact method of calculating damages assesses how much it would cost for the (assumed) infringing party to cease its unlawful action and reenter the market with a non-infringing alternative product. Apportionment is a process used to identify the specific value of the patented feature itself, apart from the whole value of the product using the patented feature.

[3] This district court opinion dealt with a series of post-trial motions, including a challenge to Samsung's damages expert. Later, other rulings of the *Apple* court were appealed and considered by the Federal Circuit. This subsequent Federal Circuit Opinion, *Apple, Inc. v. Samsung Electronics. Co. Ltd.*, 786 F.3d 983 (2015), does not discuss any issues relevant to the present Motion for Reconsideration.

2

that extent, they are correct. A "reasonable royalty" damages calculation contemplates the price at which a patent holder would license the use of its product to a would-be-infringer at a time *before* the infringement began. *Riles v. Shell Exploration & Prod. Co.*, 298 F.3d 1302, 1311 (Fed. Cir. 2002). The cost impact approach can be relevant to this inquiry because—at a time before the infringement begins—there may not be any economically-driven reason for a would-be-infringer to pay *more* than the cost of redesigning its product and putting a similar non-infringing product on the market.[4] *See Brandeis Univ. v. Keebler Co.*, No. 1:12-CV-01508, 2013 WL 5911233, at *6 (N.D. Ill. Jan. 18, 2013) (Posner, J.) ("[Defendant] would not have paid a royalty higher than the cost to it of switching to a noninfringing substitute.") In this way, a cost impact analysis can provide a relevant data-point for the jury to consider when determining the reasonable royalty rate that would be reached in a hypothetical negotiation (namely, the approach provides an estimated maximum amount that the infringing party would agree to in a hypothetical negotiation, and thus an upper bound to the reasonable royalty rate).

However, as this Court is often required to remind parties, two things may very well be true at the same time. It may well be true that an expert's cost impact approach can be useful to a jury determining reasonable royalty damages in some situations; however, it is also true that the Federal Circuit instructs this court "that in any case involving multi-component products, patentees may not calculate damages based on sales of the entire product, as opposed to the smallest salable patent-practicing unit, without showing that the demand for the entire product is

---

[4] For example, imagine that Waldo holds a patent on some feature and Timothy wants to put a product on the market that contains this feature as a non-essential component. Timothy has two options before infringement begins. First, Timothy could redesign his product and put a non-infringing product on the market for $R$. Otherwise, Timothy could negotiate with Waldo and seek a license to use Waldo's patented feature for $N$. (This is the hypothetical negotiation contemplated in the "reasonable royalty" calculation.) There may be no economic reason for Timothy to ever pay an amount, $N$, that is greater than $R$. That is, there is no fiscally obvious reason for Timothy to pay a royalty amount greater than the cost of redesigning its product into a non-infringing product. Thus, if one can determine $R$, the cost of redesign, then Waldo and Timothy would know that a reasonable royalty price reached in a hypothetical negotiation, $N$, would likely be less than $R$.

3

attributable to the patented feature." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67-68 (Fed. Cir. 2012). *See also VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014) ("No matter what the form of the royalty, a patentee must take care to seek only those damages attributable to the infringing features."); *Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1268 (Fed. Cir. 2013) cert. denied, 134 S. Ct. 1013 (2014) ("A patentee may assess damages based on the entire market value of the accused product only where the patented feature creates the basis for customer demand or substantially creates the value of the component parts"). Here, there is no contention that Wonderland's patent drives demand for or composes the substantial value of Thorley's Breeze product. Thus, even if a cost impact approach is a reasonable component of a damages analysis in some situations, this Court must still exclude Mr. Chase's testimony if, in his damages calculation, he considers the value of the whole product, rather than just the patented feature itself.

As explained in the Court's August 28, 2015 Opinion, Mr. Chase's analysis does just that. Again, "[a] 'reasonable royalty' contemplates a hypothetical negotiation between the patentee and the infringer at a time *before the infringement began.*" *Riles*, 298 F.3d at 1311. Rather than focusing on this ex-ante value of the patent, however, Mr. Chase analyzes the ex-post value of the patent by considering the inventory that Thorley acquired *after* infringement began.[5] Essentially, his analysis considers the value of the inventory that Thorley would be left holding, but unable to sell, because of the patent enforcement—and as such, the amount that Thorley would be willing to pay for a license so that it *is* able to sell this acquired inventory. ECF 81-1 at 25. Herein lies the problem. Mr. Chase values this inventory in terms of whole product units, rather than the patented component features. While this makes general sense as

---

[5] Mr. Chase does recognize, however, that "[f]or the units [of inventory] subject to intervening rights, Wonderland is not entitled to damages." ECF 81-2 at 9.

4

part of an ex-post valuation, it does not adequately isolate the value of the patented feature itself. Thus, in failing to account for the price Thorley would pay for a license *before* the infringement began (and instead analyzing the price Throley would pay for a license *after* it acquired its non-exempt inventory) Mr. Chase runs afoul of the well-established rule that a patentee may "seek only those damages attributable to the infringing features." *VirnetX*, 767 F.3d at 1326. As such, his testimony must be excluded.[6]

Of final note, this Court rejects Wonderland's argument that Mr. Chase should still be allowed to testify about the *Georgia Pacific* factors and as a rebuttal damages witness. ECF 138 at 16. Mr. Chase's *Georgia Pacific* analysis was conducted in furtherance of and as part of his

---

[6] It is worth noting that *Apple* and *Sentius*—the two primary cases cited by Wonderland—are quite consistent with this analysis.

In *Apple*, the defendants did not argue that the expert's "methodology does not require apportionment"—as Wonderland argues here, ECF 138 at 5; instead, the *Apple* defendants accepted the apportionment requirement and contended that plaintiffs' expert failed to provide sufficient evidence of this apportionment. *Apple Inc.*, 2014 WL 549324 at *6. After analyzing the expert's methodology, the Court found that the expert "sufficiently accounted for the patented and unpatented features in proposing a royalty rate to the jury," in part because her cost impact analysis examined "the costs to [defendants] of being out [of] the market long enough to design around *the patents in this case*." *Id*. Had Mr. Chase limited himself to an ex-ante analysis of the cost of designing around the patents used in Thorley's allegedly infringing crib design, he too might have fulfilled the apportionment requirements. However, Mr. Chase went beyond this and also examined the costs that Thorley would incur as a result of the excess crib inventory that it would be unable to sell. In doing so he took account of more than just "the patents in this case," *Id.*; he accounted for the whole of the final products, in contravention of the Federal Circuit's clear instructions. The law surrounding *Apple* and this Opinion are the same: an expert must apportion royalty damages by accounting for the relative value of the patented features vis-à-vis the unpatented features in the product. What differs are the facts: the *Apple* expert labored to make this apportionment, while Wonderland's expert did not.

Similarly, in *Sentius* the Court did not hold that experts employing a cost impact approach need not employ an apportionment procedure, but instead, that the damage expert's methodology sufficiently accounted for only the value of the patented features. *Sentius Int'l, LLC*, 2015 WL 451950, at *9–11. Unlike Mr. Chase's analysis, the *Sentius* expert calculated the revenue and profit that defendant would have lost if, ex-ante, "it had not included the accused . . . features in its accused products." *Id.* at *9. In other words—unlike here—the expert opined that the patented feature drove demand for the product among some subset of consumers. As such, without the patented feature, some quantity of the product in *Sentius* would never have been sold. Therefore, it was proper to account for the full value of this quantity of the product (a percentage of the whole), because the value of the patent in this quantity is the same as the value of the product itself—that is, the profits and revenue associated with the sales of these products would never have been realized without the inclusion of the patented feature. *Id.* at 11. This analysis differs from Mr. Chase's. In the present case, no subset of the accused product's demand was driven by the inclusion of the patented feature. Thus, ex-ante, there is no quantity of cribs in which the value of the patented feature equates to the value of the product. Ex-post there might be, because the inclusion of the patented feature prevents the sale of the whole product at all, but as discussed above, this ex-post analysis is the wrong frame of reference.

larger cost impact analysis. This testimony must stand or fall together, whether on direct or in rebuttal, and here, for the reasons discussed above, it falls.

An appropriate Order will issue.

_____
Mark R. Hornak
United States District Judge

Dated: October 30, 2015

cc: All counsel of record